IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R.J., B.W., D.F., D.G., and M.D., on behalf of themselves and all others similarly situated, by their next friend Jeffrey Shaman, <br><br> Plaintiffs, <br><br> v. <br><br> ARTHUR D. BISHOP, in his official capacity as Director of the Illinois Department of Juvenile Justice, <br><br> Defendant. | No. _____ <br><br> Hon. _____ |

# CLASS ACTION COMPLAINT

Plaintiffs, on behalf of themselves and all persons similarly situated, by their attorneys and next friend, complain against Arthur D. Bishop, in his official capacity as Director of the Illinois Department of Juvenile Justice, as follows:

## I. INTRODUCTION

1.  Plaintiffs bring this civil rights class action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 *et seq.*, challenging deficiencies in conditions, services, and treatment throughout the Illinois Department of Juvenile Justice ("IDJJ"), which injure the approximately 1,000 young people confined within the IDJJ's system of eight secure youth centers. Plaintiffs assert violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the federal Individuals with Disabilities Education Act. Plaintiffs seek declaratory and injunctive relief.

2.  The following systemic IDJJ conditions, services, and treatment violate the federal constitution and laws:

1

    (a)  Youth do not receive minimally adequate mental health services, including assessment and individualized treatment.

    (b)  Youth do not receive minimally adequate education services, including general education and special education.

    (c)  Youth are subjected to room confinement when not warranted, for excessive periods of time, and in improper conditions.

    (d)  IDJJ staff fail to protect youth from each other, and use excessive force against youth and encourage youth to attack each other.

    (e)  Youth are subject to months of confinement in IDJJ youth centers beyond their anticipated release dates because an appropriate community placement has not been secured.

  3.  Independent experts have published reports finding unacceptable IDJJ conditions, services, and treatment.

  4.  The state does not provide the IDJJ with sufficient staff and resources, which causes the deficient conditions, services, and treatment described herein.

## II. JURISDICTION AND VENUE

  5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).

  6.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. THE PARTIES

  7.  Plaintiffs R.J. and M.D. are confined at the IDJJ's Warrenville facility.

  8.  Plaintiffs B.W., D.F., and D.G. are confined at the IDJJ's Joliet facility.

9. Each plaintiff has suffered, or is in danger of suffering, all of the harms described herein.

10. Defendant Arthur D. Bishop is the IDJJ Director. He is the chief executive officer of the IDJJ. He is the State of Illinois official who oversees IDJJ operations, and directly or indirectly supervises all of its personnel. He is ultimately responsible for all IDJJ policies, practices, and procedures. *See generally* 730 ILCS 5/3-2.5-15(e), -20. He is sued in his official capacity only.

### IV. CLASS ALLEGATIONS

11. Plaintiffs bring this action for declaratory and injunctive relief on their own behalf and on behalf of all others similarly situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

12. The plaintiff class, which seeks declaratory and injunctive relief and not damages, consists of all youth who now are, and/or in the future will be, confined in any secure IDJJ youth center.

13. The plaintiff sub-class consists of all members of the plaintiff class who have special education needs.

14. The plaintiff class and sub-class each satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure in that:

(a) The class and sub-class are so numerous that joinder of all members is impracticable. Today, the IDJJ confines approximately 1,000 youth. Nearly half have special education needs. Every year, additional thousands of youth cycle in and out of IDJJ confinement. The IDJJ operates eight different youth centers that are dispersed at great distances from each other across the State of Illinois. Many of these youth are unable to file individual

lawsuits on their own behalves because of their lack of financial resources. The class includes youth who will in the future be confined by the IDJJ.

        (b)      There are questions of law and fact common to the class and sub-class. These common questions include whether systemic IDJJ conditions, services, and treatment violate the federal constitution and laws.

        (c)      The claims of the named plaintiffs are typical of the claims of the proposed class and sub-class. All IDJJ youth have suffered, and are at risk of further suffering, as a result of the challenged conditions, services, and treatment.

        (d)      The named plaintiffs will fairly and adequately protect the interests of the class and sub-class. The named plaintiffs have no interest antagonistic to the class or sub-class. They seek declaratory and injunctive relief on behalf of the entire class and sub-class to remedy injuries suffered by all members of the class and sub-class. They are represented by counsel who are competent and experienced in class action and civil rights litigation.

15.     The plaintiff class and sub-class satisfy the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure in that defendant has acted and failed to act on grounds that apply generally to the class and sub-class, so that final injunctive relief and corresponding declaratory relief is appropriate respecting the class and sub-class as a whole.

## V.  FACTS

**A.**     **The IDJJ**

16.     When a youth is adjudicated delinquent by an Illinois juvenile court judge, he or she may be remanded to the custody of the IDJJ. A core legislative purpose of such confinement is rehabilitation of the youth. 705 ILCS 405/5-101(1)(c); 730 ILCS 5/3-2.5-5.

17.     The IDJJ currently confines approximately 1,000 youth, aged 13 through 20.

18. The IDJJ operates eight secure facilities known as Illinois Youth Centers ("IYCs"). Specifically:

(a) IYC Chicago is located on the west side of Chicago. It currently houses about 100 male youth. It is a minimum-security facility.

(b) IYC Harrisburg is located in Saline County in southern Illinois. It currently houses about 180 male youth. It has eight medium-security units and one maximum-security unit. It also houses the reception and classification unit for male youth from southern Illinois.

(c) IYC Joliet is located in Will County in northern Illinois. It currently houses about 230 male youth. It is a maximum-security facility.

(d) IYC Kewanee is located in Henry County in western Illinois. It currently houses about 175 male youth, who either need more intense mental health treatment, or are juvenile sex offenders. It is a medium-security facility.

(e) IYC Murphysboro is located in Jackson County in southern Illinois. It currently houses about 30 male youth. It is a minimum-security facility.

(f) IYC Pere Marquette is located in Jersey County in the Metro East area of Illinois. It currently houses about 36 male youth. It is a minimum-security facility.

(g) IYC St. Charles is located in Kane County in northern Illinois. It currently houses about 130 male youth. It is a medium-security facility. It houses the reception and classification unit for male youth from northern Illinois.

(h) IYC Warrenville is located in DuPage County in northern Illinois. It currently houses about 45 female youth. It is the only IYC for female youth, and houses the reception and classification unit for female youth.

5

B. **Inadequate IDJJ mental health services**

19. Two-thirds of the youth confined at IDJJ youth centers have diagnosed psychiatric and trauma disorders. *See, e.g.,* IDJJ Briefing to the Collaborative on Reentry (Dec. 2009) at p. 13.

20. The IDJJ does not provide plaintiffs and the plaintiff class with minimally adequate mental health services.

21. In July 2010, an independent team of mental health professionals published a report finding inadequate IDJJ mental health services. This report had been requested by the IDJJ. Specifically, this report found inadequate mental health staffing, continuum of services, screening and assessment, training, and aftercare planning. *See* Illinois Models for Change, "Report on the behavioral health program for youth committed to IDJJ" (July 2010) ("IMFC 2010 report").

22. These inadequacies continue to the present. *See, e.g.,* John Howard Association ("JHA"), "Monitoring visit to IYC Kewanee" (June 2011) at p. 1 (finding reduced mental health staffing and services).

23. Youth report that they ask staff for an opportunity to meet with mental health professionals, and do not receive such meetings.

24. There have been suicides and attempted suicides at IDJJ facilities. *See, e.g.,* Steve Mills, "Suicides by troubled teens" (May 25, 2010). A substantial cause of those suicides is inadequate mental health services.

C.   **Inadequate IDJJ education services**

   1.   **General education**

   25.   The IDJJ does not provide plaintiffs and the plaintiff class with minimally adequate general education services. *See, e.g.*, JHA, "Education in the IDJJ" (2009) at p. 3 ("Teacher shortages have been so extreme at some facilities that youth do not receive the statutorily mandated number of hours of education per week.").

   26.   With excessive frequency, scheduled classes are cancelled due to teacher absences.

   27.   There are teacher vacancies in many core subjects for which, under state law, youth must earn credit in order to earn a diploma.

   2.   **Special education**

   28.   About half of the youth confined at IDJJ youth centers need special education services. *See, e.g.,* IDJJ Briefing to the Collaborative on Reentry (Dec. 2009).

   29.   The IDJJ does not provide plaintiffs and the plaintiff sub-class with minimally adequate special education services.

   30.   In January 2009, the Illinois State Board of Education ("ISBE") found that the IDJJ lacks sufficient certified special education personnel, fails to provide special education in accordance with IEPs, fails to develop IEPs, and fails to identify all youth eligible for special education services. *See* Memorandum from ISBE to IDJJ (Jan. 2009) at Table V, Areas of Concern 1, 2, & 3.

   31.   Special education services continue to be inadequate. *See, e.g.,* IMFC 2010 report at p. 58; JHA, "Monitoring visit to IYC St. Charles" (May 2011) at p. 6.

### 3. Youth with a diploma or a GED

32. About 15% of IDJJ youth have a high school diploma or a GED. *See* JHA 2009 report at p. 5.

33. Seven of the eight IDJJ facilities (all but IYC Harrisburg) do not provide any post-secondary education services.

34. At most youth centers, youth with a high school diploma or a GED are not eligible to participate in the vocational education opportunities located at the youth center's school.

35. At most youth centers, as to all youth, there are not an adequate number or variety of vocational instructors and equipment. *See, e.g.*, JHA 2009 report at p. 4.

36. Thus, about one-eighth of all IDJJ youth – those who have a GED or high school diploma and who do not reside at IYC Harrisburg – are deprived of any education opportunities at all, including any vocational education and any post-secondary education. Instead, these youth spend the vast majority of their waking hours idle.

### D. Improper IDJJ room confinement

37. The IDJJ subjects plaintiffs and the plaintiff class to improper and excessive room confinement.

38. The IDJJ imposes room confinement to punish offenses that do not involve actual or threatened violence. *See, e.g.,* JHA, "Monitoring visit to IYC Joliet" (April 2011) at p. 8; JHA, "Monitoring visit to IYC Harrisburg" (March 2011) at pp. 3-4.

39. The IDJJ imposes room confinement for a period of many days, and sometimes many weeks.

40. At IYC Joliet, youth are confined for as long as three months in "wing 7-A."

41. The IDJJ imposes confinement in rooms with unsanitary conditions, and excessive heat and cold.

42. The IDJJ deprives youth in confinement of scheduled services and reading materials.

43. At IYC St. Charles, youth with medical conditions are kept in the confinement unit. *See* JHA, "Monitoring visit at IYC St. Charles" (May 2011) at p. 5.

**E.** **IDJJ safety**

44. IDJJ staff fail to protect youth from assaults by other youth.

45. IDJJ staff provoke youth-on-youth fights.

46. IDJJ staff use excessive force against youth.

47. IDJJ staff use pepper spray or other chemical agents when not needed to prevent bodily injury, and in a manner that harms bystander youth.

**F.** **Improper confinement for lack of a community placement**

48. Almost all youth adjudicated delinquent and committed to the IDJJ receive indeterminate sentences from the juvenile court, except that IDJJ confinement cannot exceed their twenty-first birthday or the period of time an adult could be committed for the same offense. 705 ILCS 405/5-710(7), -750(3).

49. Soon after each youth arrives at an IDJJ reception and classification unit, the IDJJ assigns them an Administrative Review Date ("ARD"), meaning the date the IDJJ determines is appropriate to review that youth for presentation to the Illinois Prisoner Review Board ("IPRB").

50. The IPRB grants parole to 96% of the youth that the IDJJ presents to the IPRB. *See, e.g.,* IPRB, 2009 Annual Report at p. 13.

51. Unfortunately, youth continue to be confined because an appropriate community placement has not been secured and approved.

### G. Inadequate IDJJ resources and staffing

52. The IDJJ lacks adequate resources and staffing. *See, e.g.,* JHA, "Monitoring visit to IYC St. Charles" (May 2011) at p. 10 ("Staffing remains an issue for all of DJJ.").

53. The IDJJ's inadequate resources and staffing is a principal cause of the inadequate IDJJ conditions, services, and treatment discussed herein. For example:

(a) Because the IDJJ does not have adequate resources and staffing, the IDJJ cannot provide minimally adequate mental health and education services. *See supra* ¶¶ 19-36.

(b) Because the IDJJ does not provide such minimally adequate mental health and education services, or any other productive activity, most youth are excessively idle.

(c) This idleness directly and substantially increases the IDJJ's excessive violence, and youth behaviors that trigger overuse of room confinement. *See supra* ¶¶ 44-47.

(d) Because the IDJJ does not have adequate resources and staffing, the IDJJ does not timely locate appropriate placements for youth in the community, frequently leading to post-ARD confinement. *See supra* ¶¶ 48-51.

### H. General facts

54. All male youth in IDJJ custody are in danger of suffering all harms present at all seven IYCs for male youth, due to the potential transfers of male youth among these IYCs for various reasons.

55. The deficient conditions, services, and treatment described herein are not the product of professional judgment, and they violate accepted practice, judgment, and minimally adequate standards for juvenile corrections institutions.

56. Defendant has acted with deliberate indifference to the deficient conditions, services, and treatment described herein.

57. Defendant is a state actor, and at all times relevant to this complaint acted under color of state law.

58. As a direct and proximate result of the deficient conditions, services, and treatment described herein, and of defendant's deliberate indifference, plaintiffs and the members of the plaintiff class and sub-class are suffering and will continue to suffer irreparable harm. They have no adequate remedy at law.

59. As to the systemic conditions, services, and treatment challenged herein, plaintiffs have exhausted the IDJJ's system of administrative grievances.

## FIRST CLAIM FOR RELIEF

60. Plaintiffs, on behalf of themselves and the plaintiff class, re-allege all of the foregoing paragraphs as though fully set forth herein.

61. Defendant has denied plaintiffs and the plaintiff class their rights guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, among other reasons by:

    (a) denying them minimally adequate mental health services;

    (b) denying them minimally adequate education services;

    (c) subjecting them to forced idleness;

    (d) subjecting them to excessive and inappropriate room confinement;

    (e) subjecting them to violence, and failing to protect them from it; and

    (f) subjecting them to post-ARD confinement solely for lack of a community placement.

## SECOND CLAIM FOR RELIEF

62. Plaintiffs, on behalf of themselves and the sub-class, re-allege all of the foregoing paragraphs as though fully set forth herein.

63. Defendant has denied plaintiffs and the plaintiff sub-class their rights guaranteed by the federal Individuals with Disabilities Education Act ("IDEA"), among other reasons by:

(a) failing to identify all youth who need special education services; and

(b) failing to provide such youth with individualized special education services tailored to their needs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

(A) Enter a declaratory judgment that the IDJJ's systemic deficiencies in conditions, services, and treatment complained of herein violate the United States Constitution and the federal IDEA.

(B) Enter a permanent injunction ordering defendant to submit and implement a plan correcting these unlawful deficiencies. This plan at a minimum should include:

(1) The provision of adequate mental health services to all youth, including adequate assessment and individualized treatment.

(2) The provision of adequate education services to all youth, regardless of their status or security classification, including adequate general education and special education.

(3) As to the youth at all IYCs who have a high school diploma or a GED, the provision of adequate constructive, supervised programming reasonably directed towards

rehabilitation, such as vocational education or post-secondary education, to ensure that such youth are not subjected to forced idleness.

   (4) A ban on any room confinement for disciplinary reasons, and a rule allowing room confinement only for youth who are physically out of control and/or a present threat to the physical safety of themselves or others.

   (5) Safe, clean, and otherwise proper conditions in all areas of all youth centers, including any areas used for any room confinement.

   (6) Policies, staffing, staff training, staff supervision, and youth programs to eliminate youth-on-youth violence and staff-on-youth violence.

   (7) A ban on the use of pepper spray or similar chemical agents.

   (8) An end to the practice of post-ARD confinement solely for lack of an appropriate community placement.

   (9) Policies, staffing, staff training, and staff supervision to improve re-entry planning, and to assist paroled youth in successful re-entry.

  (C) Award plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and 20 U.S.C. § 1415(i)(3)(B).

  (D) Enter such other and further relief as deemed appropriate by this Court.

DATED: September 12, 2012

Respectfully submitted:

/s/Adam Schwartz_____
One of plaintiffs' attorneys

| | |
|---|---|
| Adam Schwartz | Maja C. Eaton |
| Harvey Grossman | Kevin M. Fee, Jr. |
| Benjamin S. Wolf | Joseph R. Dosch |
| Ruth Z. Brown | SIDLEY AUSTIN LLP |
| ROGER BALDWIN FOUNDATION | One South Dearborn |
|    OF ACLU, INC. | Chicago, IL 60603 |
| 180 N. Michigan Ave., Suite 2300 | (312) 853-7000 |
| Chicago, IL 60601 | |
| (312) 201-9740 | |