IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R.J., B.W., D.F., D.G., and M.D., on behalf of themselves and all others similarly situated, by their next friend Jeffrey Shaman, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 12-cv-7289 |
| v. | ) ) | Hon. Matthew F. Kennelly |
| CANDICE JONES, in her official capacity as Director of the Illinois Department of Juvenile Justice, | ) ) ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' UNOPPOSED SECOND MOTION
## FOR FEES, COSTS AND EXPENSES

Plaintiffs, pursuant to Rules 23(h) and 54(d)(2), respectfully move this Court for an award of $195,000 in attorney fees, taxable costs, and non-taxable expenses for all of their work in this case during the 16-month period from December 7, 2012 (the day after this Court entered the consent decree) through April 7, 2014 (the day this Court entered the remedial plan). Following negotiations, the parties agree that plaintiffs should be awarded this amount. This motion will address: (1) plaintiffs' entitlement to fees costs, and expenses; (2) the reasonable number of hours spent by plaintiffs' counsel; (3) the reasonable hourly rates; (4) the reasonable amount of out-of-pocket costs and expenses; and (5) the preparation of this motion.

I.  **Plaintiffs' entitlement to fees, costs, and expenses**

On December 6, 2012, this Court entered the consent decree in this case. D. 33. In relevant part here, that decree provides: "Plaintiffs are entitled to their reasonable attorney fees,

costs, and expenses for prosecution of this cause of action, and monitoring and enforcement of the remedial plan and consent decree." *Id.* at ¶ 44.

On February 27, 2013, this Court granted plaintiffs' first motion for fees, costs, and expenses. D. 39. That motion, which covered the 18-month period ending on December 6, 2012, sought $307,666 in fees, costs, and expenses. D. 35; D. 38.

This motion is plaintiffs' second motion for fees, costs, and expenses.

## II. Reasonable hours

During the 16-month period covered by this motion, plaintiffs' counsel worked 1,537 hours on this case. Through the exercise of billing judgment, plaintiffs cut 310 hours (20% of the total) that might arguably have been spent inefficiently. Plaintiffs herein seek compensation for the remaining 1,227 hours.

Plaintiffs are represented by counsel at the Roger Baldwin Foundation ("RBF"), which is the legal arm of the ACLU of Illinois, and by cooperating counsel at Sidley Austin LLP ("Sidley"). Lead counsel in these two offices regularly communicate to ensure an efficient allocation and supervision of work between the two offices.[1]

Two-thirds of the total hours for which plaintiffs seek compensation were performed by three RBF attorneys: Adam Schwartz, Ruth Brown and Lindsay Miller. There was only a three-month overlap of work on this case between Ms. Brown and Ms. Miller. Strategic guidance was provided by two RBF attorneys with extensive institutional reform experience (Harvey Grossman and Ben Wolf), and by two Sidley partners with extensive experience in litigating and settling complex class actions (Maja Eaton and Kevin Fee). Discrete research assignments were

---

[1] Any attorney fees awarded in this case, including for hours worked by Sidley counsel, will be contributed directly to the RBF, where they will be placed in a segregated fund restricted to the prosecution of future civil rights cases.

performed by two Sidley associates, an RBF first-year lawyer, an RBF paralegal, and four RBF legal interns.

During the 16-month period covered by this motion, two processes mandated by the consent decree were paramount. First, from January 2013 through September 2013, the three court-appointed experts conducted their investigation of the IDJJ, and prepared and filed their reports. D. 33 at ¶¶ 9-11. Second, from September 2013 through April 2014, the parties undertook negotiations, framed by the expert reports and with ongoing expert input, regarding a remedial plan. *Id.* at ¶¶ 12-15. All of the hours for which plaintiffs now seek compensation, described below, were reasonably spent to advance plaintiffs' interests in these two processes, and helped to yield the favorable remedial plan entered by this Court on April 7. D. 73. This plan, along with the decree, will advance IDJJ reform for years to come.

First, during the period of expert investigation, counsel for the parties jointly conferred on a regular basis with one or more of the experts. During these meetings, the experts described the status of their investigations and their preliminary findings, and the parties made suggestions regarding potential lines of additional investigation.

Second, plaintiffs' counsel spent substantial time reviewing the IDJJ's drafts of the remedial plan, suggesting revisions to those drafts, preparing plaintiffs' own draft remedial plan, and reviewing the experts' suggested revisions to the drafts. To advance these negotiations, the parties repeatedly met each other, and sometimes they jointly met with one or more of the experts.

Third, to ensure the best possible remedial plan, plaintiffs' counsel needed to independently gather information about current IDJJ conditions and services. They did so principally by communicating with approximately 100 class members, through face-to-face

3

interviews at IDJJ facilities and also through phone calls and letters. Plaintiffs' counsel also investigated juvenile justice policies in other states (for example, regarding solitary confinement or LGBT youths), community services in Illinois for court-involved youths, and the reports of other organizations regarding IDJJ conditions and services.

Fourth, plaintiffs performed substantial legal research on myriad complex substantive and procedural issues. Most importantly, plaintiffs synthesized the substantive due process rights of youths confined in juvenile prisons and jails to mental health services, education, and safety, and the rights of such youths to special education services under the Individuals with Disabilities Education Act. This is a complex and emerging area of constitutional and statutory rights. Plaintiffs also explored the right of such youths to access the courts, injunctive remedies to constitutional violations in prisons, the PLRA, and Illinois juvenile justice statutes. The foregoing research extended to judicial decisions, settlement agreements, and professional standards.

## III. Reasonably hourly rates

This memo will separately address (a) the RBF's ordinary hourly rates, (b) Sidley's ordinary hourly rates, (c) the PLRA hourly rate cap, and (d) the resulting attorney fee "lodestar" comprising the product of reasonable hours and reasonable rates.

### A. The RBF's ordinary rates

The RBF General Counsel have set the following hourly rates for the following RBF attorneys: $525 for Mr. Grossman, $475 for Mr. Wolf, $400 for Mr. Schwartz, $200 for Ms. Brown, $200 for Ms. Bergstrom, and $175 for Ms. Miller. They have also set hourly rates of $125 for paralegal Kaitlin Towner, and $75 for legal interns. These rates are based on these time

4

keepers' respective levels of skill and experience, and the rates that attorneys and paralegals with comparable levels of skill and experience in Chicago charge to their paying clients.

Harvey Grossman graduated in 1973 *cum laude* from the Northwestern University School of Law, where he was appointed to the Order of the Coif. From 1980 to the present, he has served as the Legal Director of the RBF, where he supervises ten attorneys. He has litigated scores of civil rights cases on a broad range of issues. His extensive experience with prison reform litigation includes *Lightfoot v. Walker*, which resulted in statewide prison healthcare standards.

Benjamin Wolf graduated in 1979 *cum laude* from the Boston College of Law, where he served as articles editor of the *Boston College Law Review*. He was a law clerk to U.S. District Court Judge James B. Moran. From 1984 to the present, he has served as Director of the RBF's Institutionalized Persons Project. He has served as lead counsel in numerous class action institutional reform cases, including *B.H. v. Johnson*, concerning the Illinois Department of Children and Family Services, and *Jimmy Doe v. Cook County*, concerning the Cook County Juvenile Temporary Detention Center.

Adam Schwartz graduated in 1995 from the Howard University School of Law, where he served as notes editor of the *Howard Law Journal* and was first in his class. He was a law clerk to U.S. Appellate Court Judge Betty B. Fletcher. From 1996 to the present, he has worked at the RBF on complex class action suits, often as lead counsel.

Ruth Brown graduated in 2009 with distinction from the Stanford University School of Law. She was a law clerk to U.S. Appellate Court Judge Sidney R. Thomas, and then to U.S. District Court Judge Matthew F. Kennelly. In 2012 and 2013, she served as an Equal Justice Works Fellow at the RBF.

Ingrid Bergstrom graduated in 2012 from the University of Chicago School of Law. Since then, she has served as a staff attorney at the RBF.

Lindsay Miller graduated in 2013 from the New York University School of Law. Since then, she has served as a staff attorney at the RBF.

Kaitlin Towner has six years of experience as a paralegal.

The RBF legal interns who worked on this case are: Sneha Dhanapal, then in her third year at Northwestern University School of Law; Jason Feld, then a recent graduate of the University of Chicago School of Law; Margaret Livingston, then in her second year at Chicago-Kent School of Law; and Mishan Wroe, then a recent graduate of the University of Chicago School of Law.

### B.     Sidley's ordinary rates

All four of plaintiffs' attorneys at Sidley are paid by their respective clients at hourly rates substantially higher than $211.50.

Maja Eaton graduated in 1984 with high distinction from the University of Iowa College of Law, where she served as notes and comments editor of the *Iowa Law Review*. She is now a partner at Sidley, where she serves as lead trial counsel on many complex class action lawsuits regarding products liability and mass torts. She has been ranked as a leading national lawyer in products liability litigation by *Chambers USA: America's Leading Business Lawyers*. She is the current President of the Board of Directors of the Legal Assistance Foundation of Chicago.

Kevin Fee graduated in 2002 *cum laude* from Harvard Law School. He is now a litigation partner at Sidley.

Joseph Dosch graduated in 2010 *cum laude* from Harvard Law School. He is now a litigation associate at Sidley.

Jaya Gupta graduated in 2013 *cum laude* from the Northwestern University School of Law.  She is now a litigation associate as Sidley.

    **C.**    **The PLRA hourly rate cap**

The Prison Litigation Reform Act ("PLRA"), at 42 U.S.C. § 1997e(d)(3), caps the hourly rate in cases like this one at 150% of the rate for court-appointed counsel under 18 U.S.C. § 3006A.  That statute, in turn, empowers the Judicial Conference to authorize a rate for court-appointed counsel that accounts for cost-of-living adjustments.  *See* 18 U.S.C. § 3006A(d)(1).  Courts have used the hourly rate authorized by the Judicial Conference to calculate the PLRA rate.[2]  The Judicial Conference has authorized an hourly rate of $141 for court-appointed counsel.  *See* Exh. 1 (excerpts of the Judiciary's FY11 Congressional Budget Summary).  Therefore, the PLRA hourly rate cap in this case is $211.50 (that is, $141 multiplied by 150%).  This Court's earlier fee award in this case (D. 39) rested on this hourly rate cap (D. 38 at pp. 7-8).

After applying the PLRA cap, the hourly rates sought here by plaintiffs for their counsel are: $211.50 for Mr. Grossman, Mr. Wolf, and Mr. Schwartz of the RBF; $211.50 for Ms. Eaton, Mr. Fee, Mr. Dosch, and Ms. Gupta of Sidley; $200 for Ms. Brown and Ms. Bergstrom; $175 for Ms. Miller; $125 for Ms. Towner; and $75 for the four RBF legal interns.

    **D.**    **The lodestar**

The product of the foregoing reasonable hours, *see supra* Part II, and the foregoing reasonable hourly rates as capped by the PLRA, *see supra* Parts III(A) – III(C), is an attorney lodestar of $227,805.73  Specifically:

---

[2] *See, e.g., Hadix v. Johnson*, 398 F.3d 863, 867 (6th Cir. 2005); *Webb v. Ada*, 285 F.3d 829, 838-39 (9th Cir. 2002); *Campbell v. IDOC*, 2001 WL 289783 (N.D. Ill. 2001), *vacated on other grounds*, 13 Fed. Appx. 433 (7th Cir. 2001).  *But see Hernandez v. Kalinowski*, 146 F.3d 196, 201 (3rd Cir. 1998) (using the rate appropriated by Congress).

| Timekeeper | Hours | Rate | Fee |
|---|---|---|---|
| Harvey Grossman | 35.65 | 211.50 | 7,539.98 |
| Ben Wolf | 35.95 | 211.50 | 7,603.43 |
| Adam Schwartz | 414.05 | 211.50 | 87,571.58 |
| Ruth Brown | 246.76 | 200 | 49,350.00 |
| Ingrid Bergstrom | 36.35 | 200 | 7,270.00 |
| Lindsay Miller | 151.10 | 175 | 26,442.50 |
| Kaitlin Towner | 56.80 | 125 | 7,100.00 |
| Sneha Dhanapal | 27.50 | 75 | 2,062.50 |
| Jason Felt | 54.60 | 75 | 4,095.00 |
| Margaret Livingston | 31.25 | 75 | 2,343.75 |
| Mishan Wroe | 19.60 | 75 | 1,470.00 |
| Maja Eaton | 14.25 | 211.50 | 3,013.88 |
| Kevin Fee | 14 | 211.50 | 2,961.00 |
| Joe Dosch | 26 | 211.50 | 5,499.00 |
| Jaya Gupta | 63.75 | 211.50 | 13,483.13 |
| **Total** | **1,227.6** | - | **$227,805.73** |

### IV. Reasonable costs and expenses

To prosecute this matter, plaintiffs' counsel at the RBF needed to incur $2,636 in out-of-pocket costs and expenses. Most of these expenses ($1,515) were incurred for travel to visit IDJJ youths. Two trips to the IDJJ's downstate facilities required air travel, lodging, car rental, gas, and $21 in meals. Four trips to the IDJJ's other out-of-town facilities required car rental or mileage, and one trip to the IDJJ's Chicago facility required a cab. The other costs are copying, transcripts of six court proceedings, and document delivery.

Plaintiffs do not seek compensation for thousands of dollars of additional out-of-pocket expenditures that might arguably have been spent inefficiently.

### V. Preparation of plaintiffs' request

After entry of the remedial plan, the undersigned attorney prepared plaintiffs' motion for fees, costs and expenses. After reviewing the itemized time and expense records maintained by

counsel contemporaneously with the work they performed, substantial fees and expenses were cut, as described above.

The undersigned counsel then sent defendant's counsel a request for the remaining fees, costs and expenses, to wit, $227,805.73 in fees and $2,636.72 in costs and expenses, for a total of $230,442.45.  In addition to the information herein, the IDJJ received itemized time and expense records from plaintiffs' counsel.  On request of the Court, plaintiffs will provide those records.

The parties then undertook arms-length negotiations, resulting in agreement to cut an additional $35,442 from plaintiffs' request.  Thus, the parties agreed, subject to this Court's review, that the IDJJ would pay plaintiffs $195,000 for their fees, costs and expenses incurred between December 7, 2012 and April 7, 2014.

## Conclusion

Plaintiffs respectfully move this Court for an award of $195,000 in attorney fees, taxable costs, and non-taxable expenses for all work in this case from December 7, 2012 through April 7, 2014.

DATED: May 30, 2014                                Respectfully submitted:

/s/Adam Schwartz
*One of plaintiffs' attorneys*

| | |
|---|---|
| Adam Schwartz | Maja C. Eaton |
| Harvey Grossman | Kevin M. Fee, Jr. |
| Benjamin S. Wolf | Joseph R. Dosch |
| Lindsay Miller | SIDLEY AUSTIN LLP |
| ROGER BALDWIN FOUNDATION OF ACLU, INC. | One South Dearborn Chicago, IL 60603 |
| 180 N. Michigan Ave., Suite 2300 | (312) 853-7000 |
| Chicago, IL 60601 | |
| (312) 201-9740 | |

# CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2014, I caused true and correct copies of the foregoing **PLAINTIFF'S UNOPPOSED SECOND MOTION FOR FEES, COSTS AND EXPENSES** to be served upon all counsel of record via the Court's ECF filing system.

/s/Adam Schwartz
Adam Schwartz