| Illinois Department of Juvenile Justice | ADMINISTRATIVE DIRECTIVE | Number | 05.01.303 |
|---|---|---|---|
| | | Page | 1 of 5 |
| | | Effective | (NEW) DRAFT |

| Section | 05 | Operations |
|---|---|---|
| Subsection | 01 | Security |
| Subject | 303 | Behavioral Management and De-Escalation |

I. **POLICY**

    A. **Authority**

    730 ILCS 5/3-2.5-20, 3-5-2, and 3-10-8

    20 Ill. Adm. Code 2504

    B. **Policy Statement**

    It shall be the policy of the Department to utilize de-escalation techniques and minimize the use of confinement in response to youth behavior. Staff should make every reasonable effort to avoid confinement and the use of force, and first attempt less restrictive techniques when possible.

II. **PROCEDURE**

    A. **Purpose**

    The purpose of this directive is to establish guidelines for staff regarding initial response to youth who have violated a department or youth center rule, failed to follow instructions of youth center staff, or otherwise behaved in a disruptive or violent manner.

    B. **Applicability**

    This directive is applicable to all youth centers within the Department.

    C. **Facility Review**

    A facility review of this directive shall be conducted at least semi-annually.

    D. **Designees**

    Individuals specified in this directive may delegate stated responsibilities to another person or persons unless otherwise directed.

    E. **Definitions**

    "Behavioral Hold" means the confinement of a youth who has violated a department or youth center rule, failed to follow instructions of youth center staff, or otherwise behaved in a disruptive manner.

    "Confinement" means intentionally keeping a youth separate from all other youth, removing a youth

| *ADMINISTRATIVE DIRECTIVE* | Effective | (NEW) DRAFT(NEW) DRAFT | Page 2 of 7 | Number 05.01.30305.01.303 |
|---|---|---|---|---|

from the general population, restricting the movement of a youth, or confining a youth to a room or area for any period of time for the reasons defined herein regardless of whether the youth is placed on a confinement unit, and includes Behavioral Holds.

"Confinement decision" means a decision by a staff member to initially confine a youth, to continue or change the basis for confinement, to remove a youth from confinement, to initially restrict access to programs or services of a youth on confinement, or continue or adjust such restrictions.

"Confinement unit" – means an area within the youth center designated by the Chief Administrative Officer to house youth who, for safety and security reasons, require close supervision and limited out of room time, access to privileges, and contact with other youth. Youth may only be placed in the confinement unit in accordance with Section 2504.225.

"Confinement Status" means a status assigned to a youth who exhibits or threatens violent, aggressive, or uncontrolled behavior and poses a serious and immediate threat to his or her own safety, the safety of others, or the security of the facility.

"Cool Down" means a Behavioral Hold where a youth is placed in an unsecure Cool Down area in accordance with this Administrative Directive.

"Secure area" means a locked room or space where a youth may be safely held and where staff can visually and verbally check on the youth from outside the room.

"Shift supervisor" means the staff member designated as the shift supervisor or other staff member with similar supervisory responsibilities, such as the zone supervisor, that the Chief Administrative Officer designates via local procedure as responsible for carrying out the duties of the shift supervisor specified in this directive.

"Time Out" means a Behavioral Hold where youth is placed in a secure Time Out area in accordance with this Administrative Directive.

F. **General Provisions**

1. The Chief Administrative Officer of each youth center shall establish local procedures implementing the provisions of this directive and other relevant Department Rules and policies regarding the use of Behavioral Holds and Confinement Status. Such local procedures shall include but are not limited to:

    a. The approved Cool Down, Time Out, and Confinement Status areas within the youth center; and

    b. Designation of staff members who are responsible for carrying out particular requirements of this directive and other relevant Department Rules and policies.

2. Behavioral management and de-escalation training shall include the Nonviolent Crisis Intervention Program; Integrating Positive Behavioral Interventions and Supports (PBIS), developed by CPI (Crisis Prevention Institute), and other training as designated by the Office of Professional Development and Training.

    a. All youth center staff shall receive behavioral management and de-escalation

| *ADMINISTRATIVE DIRECTIVE* | Effective | (NEW) DRAFT(NEW) DRAFT | Page 3 of 7 | Number 05.01.30305.01.303 |
|---|---|---|---|---|

training as part of pre-service training and a refresher course annually as approved by the Office of Professional Development and Training. All training sessions shall be led by instructors approved by the Office of Professional Development.

    b.    Youth center staff shall utilize the techniques and skills provided in the behavioral management and de-escalation training to prevent and respond to disruptive, aggressive, and violent youth behavior, including but not limited to, the use of a Cool Down or Time Out in accordance with this directive.

3.    Force may only be used on a youth as a last resort or when other means are unavailable or inadequate, only to the degree reasonably necessary to achieve a permitted purpose, and when otherwise in compliance with Department Rule 2501 and this Administrative Directive.

4.    Any confinement of a youth must be administered in compliance with Department Rule 2504.

    a.    Anytime a youth is in confinement for 18 consecutive hours or on more than 10 occasions in any 30 day period, the Deputy Director of Operations shall be notified immediately and all documentation justifying such confinement shall be forwarded to him or her.

    b.    The parents or guardian of a youth under 18 years of age shall be notified anytime such youth is confined for 24 hours or more.

    c.    All out-of-room time, receipt of services, etc. shall be noted on the Confinement Log DJJ 0451.

5.    All confinement decisions, including decisions regarding Cool Downs, Time Outs, or Confinement Status, shall be documented and justified on the Confinement Decision Form, DJJ 0450, as soon as practical by the staff member making such decision.

    a.    The justification should include facts and circumstances sufficient to meet the criteria for the particular decision based on the confinement type and location as set out in Department Rule 2504 and may be documented on an attachment to the DJJ 0450.

    b.    The Chief Administrative Officer shall review all confinement decision documentation. Such review shall be documented on the DJJ 0450.

6.    A Confinement Log, DJJ 0451 shall be completed for each shift anytime a youth is confined, including anytime a youth is placed in a Time Out or on Confinement Status. However, a DJJ 0451 is not required if a youth is placed in an unsecure Cool Down area

7.    The Chief Administrative Officer shall ensure the following information is entered into the youth data system of record any time there is an initial decision to confine a youth for any reason and any period of time, or a decision to change the basis for or location of the confinement of any youth:

    a.    Youth identification number;

| *ADMINISTRATIVE DIRECTIVE* | Effective | (NEW) DRAFT(NEW) DRAFT | Page 4 of 7 | Number 05.01.30305.01.303 |
|---|---|---|---|---|

      b.    Basis(s) for confinement;

      c.    Date and time of placement in confinement;

      d.    Date and time of removal;

      d.    Location of confinement;

      e.    A summary of the justification for the confinement, if applicable; and

      f.    Whether the decision was an initial confinement, change in basis of an ongoing confinement, or change in location of an ongoing confinement.

8.    The Chief Administrative Officer shall maintain a Confinement File which contains all Confinement Decision Forms, DJJ 0450s, and attachments and Confinement Logs, DJJ 0451s. The file shall be organized chronologically and all documentation relating to a single continuous youth confinement shall be grouped together.

9.    After the initial behavioral intervention and de-escalation, staff may enforce consequences in accordance with Administrative Directive 04.01.305 and in accordance with Department Rule 2504, as appropriate.

**G.**    **Requirements**

    **1.**    **Behavioral Holds**

      a.    A youth may be placed on a Behavioral Hold when:

          1)    A youth has violated a Department or youth center rule, failed to follow instructions of youth center staff, or otherwise behaved in a disruptive manner; and

          2)    Any staff responsible for the supervision of the youth at that time determines that:

              i)    The youth is behaviorally incapable of functioning appropriately due to anxiety, emotional distress, or temper control issues, or

              ii)    Placement in a Cool Down or Time Out in accordance with G.1.g. or G.1.h. of this directive is necessary to de-escalate youth's disruptive behavior.

      b.    All Behavioral Holds must occur in a designated Cool Down or Time Out area, or a youth's room, and may not occur on the confinement unit for youth housed in general population. However, the Chief administrative Officer may designate Cool Down and Time Out areas within the Confinement Unit for Behavioral Holds of youth housed on the confinement unit for reasons other than behavior

| ADMINISTRATIVE DIRECTIVE | Effective | (NEW) DRAFT(NEW) DRAFT | Page 5 of 7 | Number 05.01.30305.01.303 |
|---|---|---|---|---|

management.

1) All unsecure areas used for Cool Down placements must be approved and designated as Cool Down areas by the Chief Administrative Officer

2) All secure areas used for Time Out placements must be approved in writing by the Deputy Director of Operations and designated as a Time Out area by the Chief Administrative Officer.

3) When a Behavioral Hold occurs in a youth's room, either Cool Down Area or Time Out Area provisions in G.1.g. or G.1.h. of this directive shall be applicable depending on the particular circumstances and whether staff is present with the youth at all times (Cool Down) or the youth is secured in his or her room alone (Time Out).

c. A youth on a Behavioral Hold shall be removed from the Cool Down or Time Out area once staff responsible for the supervision of the youth at that time determines the youth has demonstrated an understanding of the behavior and the desire and ability to return to general population or program participation with no further behavioral issues.

d. Staff shall obtain approval from the shift supervisor prior to removing a youth from a Behavioral Hold.

e. The shift supervisor shall be immediately notified anytime a youth is placed on or removed from a Behavioral Hold. The shift supervisor shall notify the Chief Administrative Officer of the same as soon as possible.

f. At no time shall a youth be kept on a Behavioral Hold for more than 4 consecutive hours.

g. **Cool Down Area:** A youth on a Behavioral Hold shall be placed in a Cool Down area unless staff determined placement in a secure Time Out area is necessary.

1) Youth placed in a Cool Down area shall remain under direct staff supervision at all times. Such staff shall provide counseling and guidance regarding the behavior, de-escalate the behavior where necessary, and continually assess whether the youth is ready to return to general population or programing in accordance with paragraph G.1.c.

2) Unless the staff member currently supervision the youth in g.(1) above, within 30 minutes of placement, a staff member not involved in the behavioral incident shall meet with the youth and stay with the youth for the duration of the Cool Down. Such staff shall provide counseling and guidance regarding the behavior, de-escalate the behavior where necessary, and continually assess whether the youth is ready to return to general population or programing in accordance with paragraph G.1.c.

h. **Time Out Area:** A youth on a Behavioral Hold may be placed in a secure Time Out area if the youth's behavior is out of control, violent, or potentially violent.

| *ADMINISTRATIVE DIRECTIVE* | Effective | (NEW) DRAFT(NEW) DRAFT | Page 6 of 7 | Number 05.01.30305.01.303 |
|---|---|---|---|---|

1) Placement in a secure Time Out area should not be initiated when a Cool Down area could be used to safely de-escalate and control a youth's behavior.

2) Staff shall obtain approval from the shift supervisor prior to, or immediately after, any Time Out placement.

3) As soon as possible after and always within 30 minutes of placement in a Time Out area, a staff member not involved in the behavioral incident shall:

   i) Meet with the youth, provide counseling and guidance regarding the behavior and de-escalate the behavior where necessary;

   ii) Assess whether the youth is ready to return to general population or programing in accordance with paragraph G.1.c.; and

   iii) Assess whether some other intervention, including but not limited to referral to the Crisis Intervention Team in accordance with Administrative Directive 04.04.102, is necessary.

   Such contacts shall be documented on the Confinement Log, DJJ 0451

4) While a youth remains in Time Out:

   i) A staff member designated by the shift supervisor shall make a visual and verbal check on the youth at least every 15 minutes. Such checks shall be documented on the Confinement Log, DJJ 0451.

   ii) The staff member not involved in the behavioral incident shall make follow up contacts in at least 30 minute intervals as provided in G.4.b. Such contacts shall be documented on the Confinement Log, DJJ 0451.

2. **Confinement Status**

   a. A youth may be placed on Confinement Status when any staff responsible for the supervision of the youth at that time determines that the youth is:

      1) Exhibiting or threatens violent, aggressive, or uncontrolled behavior; and

      2) Poses a serious threat to his or her own safety, the safety of others, or the security of the facility.

   b. Confinement Status should not be initiated when a Behavioral Hold could be used to safely de-escalate and control a youth's behavior.

   c. Youth on Confinement Status may be placed in their room, the confinement unit,

| *ADMINISTRATIVE DIRECTIVE* | Effective | (NEW) DRAFT(NEW) DRAFT | Page 7 of 7 | Number 05.01.30305.01.303 |
|---|---|---|---|---|

    or other area designated for Confinement Status placements by the CAO.

    d.    Whenever a youth is placed on Confinement Status, the staff member completing the Confinement Decision Form, DJJ 0450, shall also complete a Mental Health Referral, DJJ XXXX.

    e.    Youth on Confinement Status shall be removed from such placement when the youth regains self-control.

    f.    Staff shall obtain approval from the shift supervisor prior to any Confinement Status placement or removal. The shift supervisor shall notify the Chief Administrative Officer of the same as soon as possible.

    g.    At no time shall a youth be kept on Confinement Status for more than 24 consecutive hours.

    h.    While a youth remains on Confinement Status:

        i)    A staff member designated by the shift supervisor shall make a visual and verbal check on the youth at least every 15 minutes. Such checks shall be documented on the Confinement Log, DJJ 0451.

        ii)    Within one hour of placement and every hour thereafter if the youth is awake, a supervisory staff member shall meet with the youth to assess whether the youth has regained self-control. Such contacts shall be documented on the DJJ 0451.

        iii)    Within four hours of placement and every two hours thereafter if the youth is awake, a mental health professional, or crisis team member if a mental health professional is not on grounds, shall meet with the youth and assess whether the youth has any immediate needs for additional mental health services. Such contacts shall be documented on a Mental Health Diagnostic and Treatment Note, DJJ 0282 and noted on the DJJ 0451.

**Authorized by:**

**Candice Jones**
**Director**