# The Status of Education Services and Supports for Students in the Illinois Department of Juvenile Justice, 2015[1]

Peter E. Leone, Ph.D.
October 22, 2015

[1] This report is a requirement of the *R.J. et al. v. Jones* Consent Decree approved by the U.S. District Court on December 6, 2012.

## Introduction and Summary

This report is the third in a series on the status of education services for youth in the Illinois Department of Juvenile Justice (IDJJ). During this last year I met with the IDJJ leadership team in Chicago, conferred with education Superintendent Davis, reviewed IDJJ policies for education and related areas, and visited each of the six facilities operated by IDJJ. As in previous years, I participated in conference calls with the parties jointly and with other monitors, and individually with attorneys for the defendants and plaintiffs. I also conferred by phone and email with several of the principals and teachers in IDJJ facilities and spoke by phone with residents at two youth centers.

The Remedial Plan approved by the Court in April 2014 set specific requirements for the IDJJ education program as well as other areas of operation at the youth centers. Among other things, the Remedial Plan required full-time schooling for youth, new staffing levels and new positions, substitute teachers, a blended instructional model, career and technical education, post-secondary education, and special education services. On September 4, 2015, IDJJ released Improving Youth Outcomes – Six Month Update: Reporting Progress on Outcomes March 2015-August 2015. The Six Month Update notes progress in a number of areas and acknowledges the considerable work to be done.

This annual report begins with a discussion of several areas where the education program has made progress during the past year, highlights innovative practices at several facilities, and identifies on-going concerns. The report then discusses the current education staffing at the youth centers and the consequences of an inadequate number staff to youth. This is followed by a review of the status of each of the education requirements of the Remedial Plan. Finally,

the report makes two recommendations to the Court to address some of the issues raised here. Appended to the report are profiles of several students interviewed during this past year.

## Mixed Progress in Meeting the Education Needs of Youth

During the past 12 months there has been a steady improvement in the quality of education services at most of the youth centers. Observations and interviews indicate that most youth who have access to a full-time education program are satisfied with the quality of the services they receive. Unfortunately, at two Youth Centers – Kewanee and St. Charles – students do not attend school full time and satisfaction with the education program is low. Also, the least academically competent students appear to be the least satisfied with the quality of services.[2] Many youth who receive full-time education services enjoy completing their work via GradPoint, a web-based virtual learning program that enables students to work relatively independently, complete coursework, and accrue credits. However, there is a significant number of youth who struggle with GradPoint and who, during interviews, disparage the quality of education services with comments like "I wish the teachers would teach." Most frequently those who struggle with GradPoint are special education students.[3]

The sections of the Remedial Plan for *R.J. v. Jones* explicitly call for a blended learning model in which teachers combine on-line instruction with individual and small group instruction. This has been occurring at some youth centers but at others there does not appear to be specific policies in place for teachers. Given the absence of school counselors at all sites and the

[2] The education superintendent mandated full-day, five days per week schedules at these sites but staff shortages have made it impossible to provide full-time education services at these sites.
[3] Many youth who are dissatisfied with the education program are eligible special education but do not receive services as specified in their IEPs (Individualized Education Programs) because of insufficient staff.

absence of administrative assistants at two sites, principals have not be able to provide the instructional leadership and work with teachers to effectively implement blended learning practices in their schools.

Two IYC schools, Chicago and Harrisburg participated with educators from youth centers in other states in a tech camp sponsored by the Center for Educational Excellence in Alternative Settings (CEEAS) this past summer. Among other things, the camp was designed to provide support to improve student achievement and engagement in math and language arts through the use of technology-enhanced learning tools and blended learning. Participating teachers from each site received a Chromebook and a 3D printer to enhance their ability to deliver instruction. In addition to teachers from the two sites, the IDJJ team included principals, the lead security staff, the assistant superintendent for programming from each facility, and the education superintendent for IDJJ.

Several other IDJJ education initiatives show the potential for engaging and intensive education services for youth. At IYC- Pere Marquette and IYC-Harrisburg, several students participate in Youth Build, a program in which youth receive both academic instruction as well as learn construction skills as they build affordable housing in the community. Currently, three youth at Harrisburg and six youth at Pere Marquette participate in the six-month long Youth Build program.

Another innovative project is a partnership between IYC-Harrisburg and Southern Illinois University's (SIU) Touch of Nature outdoor center. The program currently serves four youth

from IYC-Harrisburg; a science teacher and an SIU staff member from Touch of Nature jointly direct the program. During a visit to Harrisburg this past August, I observed youth learning about the local ecology as they restored trails at the center. Interviews with youth and discussion with staff indicated that this new initiative was highly regarded by both youth and youth center administrators.

While there has been some progress during the past year, staff shortages contribute greatly to the failure of IDJJ to meet many of the deadlines and requirements of the Settlement Agreement. The following section reviews issues related to staff shortages and reports on discussions with staff about the genesis of these shortages.

## Staffing the Education Program at the Youth Centers

The schools operated by IDJJ at the youth centers continue to experience numerous staff vacancies with serious consequences for students. As this report is being written, only two of six IDJJ Youth Centers – Pere Marquette and Warrenville – have a full complement of teachers and other education staff vacancies exist at Pere Marquette, Warrenville, and all other youth centers. The staffing at St. Charles and Kewanee and until this past June, at Pere Marquette, is particularly bad. During the past year, students at these facilities on average received less than one half the instructional time to which they were entitled. At Pere Marquette, only one teacher was on staff from January until June of 2015. Consequently, the approximately 26 students at that facility enrolled in the secondary school program attended school either in the mornings or afternoons.[4] At St. Charles long-standing teacher shortages have not abated during the past year

[4] Ten of the 36 students at Pere Marquette on August 20, 2015, had graduated from high school or had earned a General Education Development (GED) certificate.

in spite of DJJ's efforts to recruit teachers. During the period from April 16 to June 18, the school at St. Charles was closed for 10 of approximately 40 instructional days.[5] Students received on average less than 40% of the instructional time during this period. Follow-up interviews with two youth at St. Charles in August suggest that the problem may be worse than I initially thought. For example, these youth reported that in recent months, some units only attend school ½ day each week.[6]

At Kewanee there has been a slight improvement in the number of hours school is scheduled for all youth this past year, but security staff shortages have resulted in school cancellations on a regular basis. For example, at the time of my visit on June 22, 2015, school was cancelled for some youth because there were not enough security staff. Students placed on one unit at Kewanee receive no education services. My interviews with youth on 2A in the alternative placement housing indicated that school was not regularly scheduled. One youth who had been on 2A since being returned to Kewanee for a parole violation in January 2015 had not been in school for more than 6 months. Another who was placed on 2A in February 2015 had not received any school services at the time I interviewed him in June 2015. A third student on 2A had not received any education since his placement there in April 2015. At Warrenville, several youth have been housed on a separate unit for residents with the most challenging behavior and have received minimal education services. Interviews with youth and another member of the monitoring team indicated that girls on this unit only receive one hour of education services at most each day.

---

[5] On three of the 10 days school was cancelled during this two month period, school was closed in the morning or afternoon; on the other seven days, school was closed the entire day.

[6] The students interviewed by phone on August 26. 2015 were residents of Robinson and Cleveland cottages.

Students receive less than the five hours of academic instruction at Kewanee and St. Charles (and until this past June at Pere Marquette) each day for several reasons. Shortages of qualified teaching staff is a major contributor to inadequate academic time for students. A second related problem is the lack of sufficient numbers of custody and security staff needed to escort youth to the schools and provide supervision while youth are in school. In December 2014, IDJJ received an exemption from State personnel code via Senate Bill 2992, As Amended. This change enabled applicants for IDJJ teaching and education support positions to bypass the CMS grading process to qualify for employment. While this change in the regulatory requirements for hiring IDJJ education staff was welcome by IDJJ administrative staff, it has been inadequate to ensure that the education programs are fully staffed.[7]

[7] Teaching and other staff shortages are not due to insufficient interest in teaching incarcerated youth. Rather the shortages as associated with the cumbersome and protracted hiring process that IDJJ is required to use to fill vacant positions.

Table 1 shows the extent of the teaching and other staff shortages in the IDJJ education programs based on an August 2015 staffing update provided by IDJJ.[8]

*Table 1: IDJJ Education Vacancies, August 2015*

| | Positions Required by the Remedial Plan | Current Vacancies |
|---|---|---|
| Special Education Teachers | 36[9] | 21 |
| General Education Teachers | 54 | 15 |
| Vocational Instructors | 10 | 7 |
| School Counselors | 8.5 | 8.5 |
| Special Education Instructional Specialists | 5[10] | 5 |
| Office Coordinators | 6 | 2 |
| Library Associates[11] | 6 | 4[12] |
| Totals | 125.5 | 62.5 |

There are on-going problems associated with filling vacant positions and attracting new talent to classrooms and support positions. In September, 2014 the monitors jointly sent a letter to Director Jones urging her to work for legislative and/or regulatory reform that would enable the agency to recruit and hire staff independently from Central Management Services. We opined that it would be extremely difficult to fill vacant positions and achieve compliance with the Remedial Plan in the absence of major changes in the ways in which IDJJ hires staff. The relief provided by Senate Bill 2992, As Amended, eliminates one step in a cumbersome hiring process but IDJJ continues to suffer from a system inadequate and inappropriate for hiring teachers in a

[8] Correspondence with youth center principals in September 2015 confirmed the extent of the shortages though the exact number of vacancies may have changed.
[9] As required by the Remedial Plan submitted by the parties and approved by the Court. The numbers of required teaching positions were generated by the school superintendent and human resources staff.
[10] Special ed. Instructional specialists at Pere Marquette and Warrenville are .5 FTE.
[11] Per discussions between the education monitor and defendant's counsel, these positions will be filled with librarians once position descriptions have been developed.
[12] Library associates at Pere Marquette and Warrenville are .5 FTE.

competitive marketplace where most positions are advertised and filled between March and August each year. With the exception of two teachers hired at Pere Marquette in June 2015 in response to a crisis, the time between posting positions and hiring staff takes months longer than it should. Well-qualified teachers receive teaching offers from school districts while awaiting to clear background screening and other hurdles associated with IDJJ's hiring process. IDJJ has minimal ability to speed up the current hiring process.

**Consequences of Staff Vacancies on Youth.** The effects of an inadequate number of teaching, supervisory, and support staff on youth are consequential. When youth are unable to attend school full-time because of unfilled teaching positions and vacancies among custody and security staff, they fall further behind their peers. The likelihood that they will be able to earn a sufficient number of credits and complete coursework and graduate from high school or alternatively pass the GED test are diminished. Further, the ability of students to complete coursework and achieve milestones is also compromised.

## Status of Compliance with the Remedial Plan

The status of each of the education components of the Remedial Plan is discussed below.

1. *Full-Time, Full-Day Instruction.* IDJJ does not provide full-time, full day instruction – five hours per day - on all scheduled school days in each youth center. Youth with high school diplomas or GEDs do not receive the 2 ½ hours of services as specified in the Remedial Plan. Youth in reception and classification units do not receive any alternative education services.
2. *Teacher Staffing Levels.* Less than one-half of all positions required by the Remedial Plan have been filled. Special education services and staffing levels have been effected by staff shortages. While DJJ has worked diligently with the legislators, Central Management

Services, and with Shared Services, the efforts to date have been inadequate to address education staff shortages. Per the Remedial Plan, these positions should have been filled by April 2015.

3. *Other Education Staffing Levels.* DJJ and the education monitor have conferred about appropriate staffing levels for school librarians, school counselors, school clerical staff, and special education instructional specialists to assist special education teachers. To date, the vast majority of these positions have not been filled and a number of new positions have yet to be created or authorized.

4. *Substitute Teacher Policy*. DJJ has a substitute teacher policy.[13] None of the schools in the youth centers have substitute teachers.

5. *Modified School Calendar.* During the 2014-15 school year, the IDJJ operated under a modified school calendar that minimized teacher absences during the academic year.[14] The 2015-16 calendar is similar but while the academic calendar specifies non-instructional days during traditional school holidays such as at the end of the year and during the summer, teachers are allowed to work these non-instructional days and take vacation time during the middle of the semester.[15] The absence of substitute teachers compounds this problem as some students do not receive education services while their teachers are on vacation.

6. *Blended Instructional Model.* The blended instructional model required by the Remedial Plan has been unevenly implemented at best. Some teachers do provide individual and small group instruction periodically in their classrooms. At most sites however, implementation is uneven.

[13] IDJJ School District, Board Policy 5:220.
[14] This calendar was reviewed and approved by the Court.
[15] This practice would never be tolerated in a public school system.

7. *Curriculum.* The GradPoint web-based instructional system has been in place for several years. Problems associated with adequate technical support for the system (e.g., inadequate band width to operate the program) are slowly being addressed. As noted earlier, a blended instructional model as specified in the Remedial Plan, is not a reality in most IDJJ classrooms. Because of inadequate staffing, students are not able to stay on track and make adequate progress toward graduation at two of the six youth centers. Vocational education or CTE (career and technical education) is only available to a small fraction of youths in custody. While several sites have purchased building trades programs such as Paxton-Patterson, for the most part, equipment and technology set unused because of inadequate space or lack of teachers.[16] Several sites have youth enrolled in Youth Build, a six-month building trades program and at IYC-Harrisburg, a culinary arts program was reinstituted this summer.[17] Most youth with a high school diploma or a GED certificate have no regularly scheduled academic or vocational programming. With the exception of a handful of youth enrolled in Youth Build and several youth participating in the partnership with Touch of Nature Center at SIU, graduates spend their time on the units and working at the youth centers. Very few youth with literacy levels below the 25th percentile receive intensive literacy support as required by the Remedial Plan. Students at several youth centers receive tutoring from Literacy Volunteers of Illinois, but no IDJJ staff provide these services.

8. *Special Education Policies and Procedures*. Because of the vast number of unfilled education position and the shortage school psychologists' services, many students in the youth centers do not receive special education services as specified on their IEPs. In many

[16] At St. Charles, the Paxton-Patterson materials are on site but are not used. The teacher, a union negotiator, has been off site 3 days every two weeks. Because he is the only CTE teacher at St. Charles and because there are no substitute teachers, students do not receive services.

[17] To date, ServSafe Certification – the industry standard for food handlers – is not available for students in this program. Most culinary arts programs routinely provide this certification as part of the curriculum.

cases, IEPs are out of date and the implementation and monitoring process associated with special education service delivery is absent. IDJJ has updated its special education policies but is unable to implement them because of the dire staffing situation.

## Infrastructure

In the September 2013 and October 2014 reports to the Court, I discussed the lack of infrastructure supporting the education program. Problems noted earlier, the absence of school counselors, librarians, substitute teachers, and administrative assistants continue in spite of the Remedial Plan. The significant problems with hiring well-qualified staff including the ability to appoint new staff in a timely manner can be directly attributed to the cumbersome and unwieldly hiring practices. In spite of relief provided to IDJJ earlier this year that enabled the agency to bypass the CMS grading process, much of the control and timeliness of hiring is not in the hands of IDJJ administrative or human resources staff. Absent regulatory change, things are unlikely to improve.

Unlike many state employees, teachers and other professionals working in the public schools are typically hired and typically change jobs on a cyclical basis. That is, positions are often posted in the spring and early summer and school districts determine who will remain on staff and who is retiring or moving to a new position. By July or early August, most school districts offer contracts to their professional staff for the coming year. Once teachers and other professionals sign contracts, they are obligated to remain with the school district under contract for the duration of the academic year. When teachers apply for positions in state agencies like the IDJJ they have few options when job offers are tendered by school districts but the IDJJ hiring process

is not complete. Most teachers do not have the luxury to wait to see if they are offered a contract by IDJJ after the beginning of the academic year. Teachers who begin the school year under a contract with a local school district risk sanctions from the Illinois State Board of Education if they resign to take a position with IDJJ.

## Recommendations

1. The IDJJ leadership in concert with CMS, the Illinois State Board of Education, and appropriate Illinois legislative committees, needs to address the problems associated with the inability of the State to fill teaching and other education vacancies.[18] [19]
2. IDJJ and the State need to develop a plan to provide compensatory education and support services to youth who, because of absence of teachers and lack of custody or security staff, were unable to attend school and earn credits at an appropriate pace while incarcerated at IDJJ facilities. These services should be individually tailored and provided in the community by public and private providers. Appropriate services could include academic remediation and support, career counseling, GED preparation, post-secondary education, and credit recovery.[20]

October 22, 2015

[18] No one reading this report would tolerate a school district that failed to provide timely services that meet state requirements and provided full-time instruction for their own children.
[19] This problem is not unique to vacancies for IDJJ education staff.
[20] During discussion of a draft copy of this report with the parties, defendants' attorneys opined that this recommendation was beyond the scope of the Remedial Plan.

## Profiles of IDJJ Youth[21]

- CM is a 15 year old student at St. Charles. He is eligible for special education services but does not receive the instructional time to which he is entitled because school is frequently cancelled due to staff shortages.
- GS is a 15 year old from Waukegan. At the time he was interviewed, he had spent five months at St. Charles and anticipated leaving in March 2016. His favorite subject is math and his favorite author is Walter Dean Meyers. He doesn't like frequent school cancellations and is concerned that he does not earn credits when he is not in school.
- ES, MD, and BL are youth housed on unit 2A, a specialized housing unit at Kewanee. Like the other seven youth on 2A, these youth aged 16-20 receive no education services. ES, a 17 year old with 10 ¾ credits, was placed on unit 2A in January 2015.
- EB, graduated from high school in 2013 at an IDJJ facility. He has spent much of the past two years at IYC-Harrisburg and Pere Marquette with no education services because he has a high school diploma and education services are not available to graduates and GED recipients. EB is interested in becoming a welder or diesel mechanic.
- BG, a 17 year old with a history of special education services, has 10 ½ high school credits. He likes to read and says that the teachers at ICY-Harrisburg are nice. He doesn't like working on computers and prefers book work. His favorite subject is math.
- WC is a 17 year old from Peoria with 10 credits. He likes the school program in the IDJJ. He is interested in studying business in college after graduating from high school. He spent three weeks on the intake unit at IYC-Harrisburg where he received no education services.
- MK is an 18 year old from Dixon with a GED. He was placed at IYC-Harrisburg in February 2015 and anticipates release in March 2016. He is interested in becoming a welder but has not received any CTE (Career and Technical Education) services in IDJJ facilities since receiving his GED.

---

[21] The initials of the youth profiled here have been changed to protect their identity.