UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R.J., et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 12-cv-7289 |
| ) | |
| v. ) | Hon. Matthew F. Kennelly |
| ) | |
| CANDICE JONES, ) | |
| ) | |
| Defendant. ) | |

## JOINT STATUS REPORT

Pursuant to this Court's February 28, 2016 Minute Entry (Dkt. No. 160), plaintiffs and defendant, by their respective counsel, hereby submit the following Joint Status Report.

## Introduction

Since the filing of the monitors' reports in late October and early November 2015 (Dkt. 154 and 156), the parties have exchanged correspondence and conferred about education, security, and mental health staffing.[1] As reported to the Court at the January 7, 2016 status hearing, the parties met in person on December 18 together with the Director of the DJJ, and counsel for the parties had a further meeting on February 26, 2016. DJJ updated plaintiffs' counsel regarding the impact of Senate Bill 1560 on its population and the planned closure of the Kewanee facility. This Joint Status Report updates the Court as to the issues on which the parties have conferred.

---

[1] On November 10, 2015, plaintiffs' counsel sent a letter to defendants' counsel regarding educational staffing and programming, to which defendants' counsel responded on December 10, 2015. Plaintiffs' counsel sent a further letter regarding educational staffing and programming, and the establishment of mental health staffing levels pursuant to Part II, para. 4 of the Remedial Plan (Dkt. 73) to defendants' counsel on January 29, 2016. Defendant sent a response letter on March 3, 2016. In addition to this correspondence and the meetings noted above, the parties have also communicated by email and phone as to these issues.

### Reduction in DJJ's Population

Public Act 99-0268 (Senate Bill 1560), effective January 1, 2016, instituted a number of reforms that have resulted in a decrease in the DJJ's population. Under P.A. 99-0268, youths in aftercare who are charged with a new adult offense are no longer returned to DJJ facilities; the lengths of aftercare terms have been reduced; and youths found guilty of misdemeanors are no longer committed to the DJJ. In part as a result of SB 1560, DJJ's population in custody has declined to 422 youths (as of March 4, 2016), as compared to approximately 1,000 youths when plaintiffs filed suit.

### Closure of IYC-Kewanee

On February 12, 2016, DJJ announced plans to close IYC-Kewanee, a large, medium-maximum security facility that has housed, among other youths, certain high-need groups, including juvenile sex offenders and youths in need of intensive mental health services. The decision was based on a number of considerations, including the challenges at the facility identified by the three Court-appointed monitors, as well as national best practices, youth outcomes, and costs. DJJ has responded to plaintiffs' counsel's inquiries regarding its plans for youths residing at Kewanee but, as of this filing, cannot confirm the date of facility closure or to which of the remaining DJJ facilities the services for youths historically housed at Kewanee will be relocated.

### Education Staffing and Services

Plaintiffs' counsel's November 10, 2015 letter raised concerns regarding education staffing, based in part on Dr. Leone's October 2015 monitoring report. Since that time, DJJ has relied on hiring educators and the significant reduction in youth population to meet ratios. DJJ

provided data to plaintiffs' counsel showing that it is currently in compliance with the Remedial Plan regarding general education teachers at all facilities, and special education teachers at all facilities except Pere Marquette and Kewanee (which is closing). DJJ reported that Pere Marquette has hired two additional special education teachers with start dates of March 1, 2016 and April 1, 2016, which will bring that facility into compliance as well. Finally, DJJ apprised plaintiffs' counsel of the status of other education staff required by the Plan, including office coordinators, library associates, and school counselors.

Plaintiffs' counsel, after a recent observation visit to IYC-St. Charles, also inquired about full-day school at that facility. DJJ detailed its plan to ensure the provision of full-day school for all youths at St. Charles by modifying the school classroom layout, scheduling, security assignments, and youth movement. Implementation began on February 25, 2016. DJJ agreed to advise plaintiffs' counsel by the end of March about the status of school at St. Charles, and plaintiffs' counsel intends to visit St. Charles in April to observe.

### Security Staffing

Per their request, DJJ provided data to plaintiffs' counsel regarding security staffing ratios at each of its facilities. Adequate security staffing is needed not just for safety but also to ensure that youths can be escorted to educational or other services. The data shows that DJJ currently meets the ratios required by the Remedial Plan. In addition, DJJ is training an additional class of security staff, who will begin working in the facilities on March 21, 2016. Nineteen staff members will go to IYC-St. Charles. Another class of security staff is also planned, with screening on March 3, 2016, training to begin in April, and work in the facilities to begin in late May or early June. Approximately twelve or thirteen staff members will go to St. Charles.

3

**Mental Health Staffing**

On February 9, 2016, DJJ provided plaintiffs' counsel and the Court-appointed monitors with proposed mental health staffing ratios. The Court's mental health expert, Dr. Louis Kraus, provided initial comments on March 2, 2016. The parties will confer with each other and Dr. Kraus and then submit a proposal to the Court for its approval. In addition, DJJ is currently negotiating a contract for a board-certified child and adolescent psychiatrist as required by the Remedial Plan.

DATED: March 8, 2016

Respectfully submitted,

| For the plaintiffs: | For the defendant: |
|---|---|
| By: /s/ Lindsay S. Miller | By: /s/ Michael T. Dierkes |
| Benjamin S. Wolf<br>Camille Bennett<br>Lindsay S. Miller<br>Roger Baldwin Foundation of ACLU, Inc.<br>180 North Michigan Avenue, Suite 2300<br>Chicago, IL 60601<br>(312) 201-9740 | Michael T. Dierkes<br>Office of the Illinois Attorney General<br>General Law Bureau<br>100 West Randolph Street, 13th Floor<br>Chicago, IL 60601<br>(312) 814-3672 |
| Maja C. Eaton<br>Kevin M. Fee, Jr.<br>Joseph R. Dosch<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>(312) 853-7000 | |

## CERTIFICATE OF SERVICE

      I, Lindsay S. Miller, an attorney, hereby certify that I have caused a true and correct copy of the foregoing JOINT STATUS REPORT to be served on March 8, 2016 upon all counsel in this case via the Court's electronic filing system.

                                                            /s/ Lindsay S. Miller