IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R.J. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-7289 |
| | ) | |
| CANDICE JONES, | ) | Hon. Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |

## SUPPLEMENTAL ORDER

For good cause shown, the Court orders, adjudges, decrees, and finds as follows:

## PART I: GENERAL PROVISIONS

1. Prior proceedings.

    (a) Complaint. On September 12, 2012, plaintiffs filed this civil rights class action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 *et seq.* Plaintiffs are youths confined in secure facilities operated by the Illinois Department of Juvenile Justice ("DJJ"). Defendant is the DJJ Director. The complaint alleges that certain DJJ conditions, services, and treatment violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the federal Individuals with Disabilities Education Act. Specifically, the complaint addresses DJJ mental health services, general and special education services, room confinement, safety, and commitment beyond release dates for lack of a community placement. The complaint seeks declaratory and injunctive relief. *See* Dkt. 1.

    (b) Class certification. On September 26, 2012, this Court certified a plaintiff class consisting of all youths who now are, and/or in the future will be, confined by the DJJ, and of a sub-class consisting of class members with special education needs. *See* Dkt. 12-13, 17.

    (c) Consent decree. On December 6, 2012, this Court entered and approved a consent decree and appointed three experts. *See* Dkt. 32-34. The consent decree required the court-appointed experts to investigate DJJ conditions and services, and then to file a report of their findings and recommendations. *See* Dkt. 33 at ¶¶ 6, 10-11. The court-appointed experts are Louis Kraus on mental health issues, Peter Leone on education issues, and Barry Krisberg on general juvenile justice issues. *Id.* at ¶ 7. Next, the consent decree required the parties, with expert input, to prepare and file either an agreed proposed remedial plan, or separate proposed remedial plans from each party. *Id.* at ¶¶ 12-15. The consent decree required the remedial plan to, among other

things, ensure the provision of adequate mental health services to all IDJJ youth. *Id*. at ¶17. The consent decree then required this Court, subject to its review and approval, to enter the final remedial plan as a new order. *Id.* at ¶ 16.

(d) Expert reports. On September 23, 2013, the parties filed the reports of the court-appointed experts, including their findings and recommendations. *See* Dkt. 51.

(e) Remedial plan. On April 7, 2014, this Court entered and approved a remedial plan. *See* Dkt. 73. Among other things, it requires the establishment of appropriate staffing levels and qualifications of mental health professionals, including deadlines for implementation, and their adoption in a supplemental order. *Id*. at II(4).

2. PLRA findings and stipulations. The Court finds, based among other reasons on the reports of the court-appointed experts, and the parties stipulate that this supplemental order complies in all respects with the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a). Specifically, the terms of this supplemental order are narrowly drawn; they extend no further than necessary to correct the violation of the federal rights of the plaintiffs, the plaintiff class, and the plaintiff sub-class; and they are the least restrictive means necessary to correct the violation. The court has given substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the terms of this supplemental order.

## PART II: DEFINITIONS

3. Mental health acuity levels. DJJ screens and assesses youths' mental health needs during intake at its Reception and Classification centers. Each youth is designated a mental health acuity level (MHL) based on the following criteria:

   (a) MHL 0: youth with no history of, or current noted signs or symptoms of, a DSM-V diagnosis, and no current noted signs or symptoms of situationally elevated mental health needs. (Substance abuse and Conduct Disorder are excluded diagnoses; substance abuse treatment is handled independently.)

   (b) MHL 1: youth who is currently presenting with mild signs or symptoms of a DSM-V diagnosis or situational mental health needs, and who may or may not have a history of mental health treatment.

   (c) MHL 2: youth with a history of mental health treatment who is currently presenting with moderate signs or symptoms of a DSM-V diagnosis and/or situationally elevated mental health needs.

   (d) MHL 3: youth with a significant history of mental health treatment who is currently presenting with moderate to severe signs or symptoms of a DSM-V diagnosis.

(e) MHL 4: youth with a significant history of mental health treatment, which may include recent significant mental health issues and/or psychiatric hospitalization, who is currently presenting with severe and acute signs or symptoms of a DSM-V diagnosis.

### PART III: STAFFING RATIOS AND QUALIFICATIONS

4. Staffing ratios for mental health professionals. DJJ shall achieve and maintain the following average staffing ratios for mental health professionals, based on individual youth needs as designated by the mental health acuity level, and subject to future modification based on monitoring by the court-appointed mental health expert:

    (a) MHL 0: At least one mental health professional per 35 youths at this designation.

    (b) MHL 1: At least one mental health professional per 20 youths at this designation.

    (c) MHL 2: At least one mental health professional per 10 youths at this designation.

    (d) MHL 3: At least one mental health professional per 8 youths at this designation.

    (e) MHL 4: At least one mental health professional per 5 youths at this designation.

5. Qualifications of mental health professionals. All mental health professionals shall be licensed or working toward licensure, with licensure to be obtained within one year of the date of employment at DJJ. Acceptable licensure shall include: licensed social worker (LSW), licensed clinical social worker (LCSW), licensed professional counselor (LPC), licensed clinical professional counselor (LCPC), and licensed clinical psychologist (LCP).

6. Deadlines for implementation. The provisions of paragraphs 4 and 5, above, shall be implemented no later than 120 days after the entry of this Supplemental Order.

7. Monitoring. The court-appointed mental health expert shall monitor and assess whether the foregoing staffing ratios and qualifications for mental health professionals are sufficient to ensure delivery of individual and group therapy to DJJ youths based on their diagnostic needs and services called for in their individualized mental health treatment plan (*see* Dkt. 73 at II(4)), and shall report his findings as part of his annual monitoring report. *See* Dkt. 33 ¶¶ 29, 32. Based upon these findings, the court-appointed mental health expert and the parties shall discuss whether to move this Court to adjust the foregoing mental health staffing ratios and qualifications, and either party may so move.

IT IS SO STIPULATED AND AGREED:

| For the plaintiffs: | For the defendant: |
|---|---|
| By:  */s/ Camille Bennett* | By:  */s/ Michael T. Dierkes* |

| | |
|---|---|
| Adam Schwartz | Michael T. Dierkes |
| Harvey Grossman | Office of the Illinois Attorney General |
| Benjamin S. Wolf | General Law Bureau |
| Lindsay Miller | 100 West Randolph Street, 13th Floor |
| Roger Baldwin Foundation of ACLU, Inc. | Chicago, IL 60601 |
| 180 North Michigan Avenue, Suite 2300 | (312) 814-3672 |
| Chicago, IL 60601 | |
| (312) 201-9740 | |

Maja C. Eaton
Kevin M. Fee, Jr.
Joseph R. Dosch
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

IT IS SO ORDERED:

By: _____
 Matthew F. Kennelly
 United States District Court Judge

Date: May 10, 2016