IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R.J., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:12-cv-7289 |
| v. ) | |
| ) | Hon. Matthew F. Kennelly |
| HEIDI MUELLER, in her official capacity as ) | |
| Director of the Illinois Department of Juvenile ) | |
| Justice , ) | |
| | |
| Defendant. | |

## AMENDED CONSENT DECREE

For good cause shown, the Court orders, adjudges, decrees, and finds as follows:

### I. INTRODUCTION

1. <u>The complaint</u>. Plaintiffs filed this civil rights class action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 2201 *et seq*. Plaintiffs are youth confined in secure Illinois Youth Centers ("IYCs") operated by the Illinois Department of Juvenile Justice ("IDJJ"). Defendant is the IDJJ Director. The complaint alleges that certain IDJJ conditions, services, and treatment violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the federal Individuals with Disabilities Education Act. Specifically, the complaint addresses IDJJ mental health services, general and special education services, room confinement, safety, and commitment beyond release dates for lack of a community placement. The complaint seeks declaratory and injunctive relief.

2. <u>Class certification</u>. The Court certified a plaintiff class consisting of all youth who now are, and/or in the future will be, confined by the IDJJ, and of a sub-class consisting of class members with special education needs.

3. <u>PLRA findings and stipulations</u>. The Court finds and the parties stipulate that this consent decree complies in all respects with the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a). Specifically, the terms of this consent decree are narrowly drawn; they extend no further than necessary to correct the violation of the federal rights of the plaintiffs, the plaintiff class, and the plaintiff sub-class; and they are the least restrictive means necessary to correct the violation. The court has given substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the terms of this consent decree.

4. <u>No admission of liability</u>. The parties agree that to avoid costly and protracted litigation, the claims against the defendant should be resolved by this consent decree. By entering

into this consent decree, or by taking any action in accordance with it, the defendant does not admit any of the allegations contained in plaintiffs' complaint, nor does the defendant admit liability for any purposes.

     5.     <u>Jurisdiction</u>. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## II. CREATING THE REMEDIAL PLAN

**A.**     **<u>The process of creating the remedial plan</u>**

     6.     <u>The court-appointed experts</u>. The Court shall appoint expert witnesses. These experts shall investigate IDJJ mental health services, general and special education services, room confinement, safety, and commitment beyond release dates for lack of a community placement. The defendant shall compensate the experts for their reasonable time and expenses.

     7.     <u>Selection of the court-appointed experts</u>. The parties jointly propose the following experts for court appointment:

     (a)     Education: Peter E. Leone, Ph.D., Professor in the Department of Special Education, University of Maryland.

     (b)     Mental Health: Louis Kraus, M.D., Chief, Child and Adolescent Psychiatry, Rush University Medical Center.

     (c)     General Juvenile Justice: Barry Krisberg, Ph.D., Director of Research and Policy and Lecturer in Residence, Chief Justice Earl Warren Institute on Law and Social Policy, University of California, Berkeley School of Law.

     8.     <u>Substitution of the court-appointed experts</u>. If a court-appointed expert is unwilling or unable to continue to serve, then within 30 days, either:

     (a)     the parties shall jointly file with the Court the name of the agreed proposed substitute, subject to Court approval; or

     (b)     if the parties cannot agree upon the substitute, the parties shall each submit to the Court the name and qualifications of their respective proposed substitute, and the Court will select the experts.

     9.     <u>Initial meeting of the court-appointed experts with the parties</u>. Within 30 days after their appointment, and before they begin their investigation, the court-appointed experts shall simultaneously meet with both parties. The purpose of this meeting will be to discuss the upcoming investigation by the court-appointed experts of the five subjects identified above in paragraph six. At this meeting, either party may suggest that the court-appointed experts focus their investigation on certain issues or facilities, and/or should not focus their investigation on other issues or facilities. The court-appointed experts shall use their best professional judgment

to independently determine what matters need to be examined, and what methods are required for such examination.

10. <u>The court-appointed experts' investigation</u>. Within 180 days after their initial meeting with the parties, the court-appointed experts shall complete their investigation of the five subjects identified above in paragraph six. The experts shall have access to all facilities, documents, information, staff, and confined youth of the IDJJ and of any person or agency contracting with the IDJJ to provide services to youth. The experts may conduct private, ex parte interviews of youth and staff. The experts may conduct unannounced visits to any IDJJ facility.

11. <u>The court-appointed experts' report</u>. Within 180 days after their initial meeting with the parties, the court-appointed experts shall file with the Court, and deliver to the parties, a report containing their findings regarding the adequacy of the conditions, treatment, issues, and services described above in paragraph six. Where such conditions, treatment, issues, and services are not adequate, these experts shall recommend specific ways to remedy such inadequacies.

12. <u>The defendant's draft remedial plan</u>. Within 60 days after the court-appointed experts file and deliver their report, the defendant shall deliver to plaintiffs and the court-appointed experts a draft remedial plan that addresses all of the deficiencies identified by the experts. The defendant may seek input from the plaintiffs and the experts.

13. <u>Proposed revisions to the draft remedial plan</u>. Within 30 days after the defendant delivers to plaintiffs and the court-appointed experts the draft remedial plan, the plaintiffs and the experts shall deliver to defendant their respective proposed revisions.

14. <u>Conferring about the draft remedial plan</u>. Within 30 days after the plaintiffs and the court-appointed experts deliver their proposed revisions to defendant, the parties and the court-appointed experts shall meet and confer in a good faith effort to resolve any disagreements.

15. <u>Process for approving the proposed remedial plan</u>. Within 30 days after the plaintiffs and the court-appointed experts deliver their proposed revisions to defendant, either:

(a) The parties jointly shall file with the Court their agreed proposed remedial plan. The parties shall structure the remedial plan so that it complies with the PLRA, and shall so stipulate as set forth above at paragraph 3. The parties shall jointly move the Court to make the same findings in compliance with the PLRA. Or:

(b) The parties each shall file with the Court their separate proposed remedial plans. The court-appointed experts will be available at the Court's request to report in writing regarding their opinions of those plans. The Court will resolve any disputes.

16. <u>Entry of the remedial plan</u>. Subject to the Court's review and approval, the Court shall enter the final remedial plan as a new order.

**B.     The substance of the remedial plan**

　　**1.     Mental health services**

17.     The remedial plan shall ensure the provision of adequate mental health services to all IDJJ youth, including but not limited to: screening and assessment upon reception; identification of youth whose mental health needs change; appropriate treatment planning; provision to each youth of the particular mental health services set forth in their individualized mental health treatment plan; appropriate, prompt, and confidential access to mental health professionals; appropriate suicide prevention; appropriate prescription and monitoring of psychotropic medications; appropriate and prompt hospitalization of youth when required; appropriate substance abuse diagnosis and treatment; appropriate juvenile sex offender treatment; and appropriate aftercare and discharge planning.

　　**2.     Education services**

18.     General education. The remedial plan shall ensure adequate general education services to all youth, regardless of their status or security classification, including but not limited to: an appropriate number of hours of instruction per week; appropriate instruction in all subjects where youth must earn credit to graduate from secondary education; and appropriate vocational education.

19.     Special education. The remedial plan shall ensure adequate special education services to all youth with special education needs, regardless of their status or security classification, including but not limited to: identification of youth with special education needs by the IDJJ's own screening and by conferring with each youth's home school district; developing and implementing an appropriate IEP for each qualifying youth; and providing appropriate special education services.

20.     Exercise, recreation, and work. For all youth, regardless of their status or security classification, the remedial plan shall ensure, during non-school hours and days, adequate constructive, supervised rehabilitative services, including an appropriate mix of physical exercise, recreational activities, and work "details."

21.     Youth with a diploma or GED. The remedial plan shall ensure, during school hours, for youth at all IYCs who have a high school diploma or a GED, regardless of their status or security classification, adequate constructive, supervised programming reasonably directed towards rehabilitation, such as vocational education and post-secondary education, to ensure that such youth are not idle.

　　**3.     Room confinement**

22.     The remedial plan shall ensure appropriate policies, staff training and supervision, and physical conditions regarding room confinement, including but not limited to the circumstances (if any) under which room confinement may be used, the duration of confinement,

4

the physical conditions of confinement, treatment and services during confinement, and monitoring of youth in confinement.

### 4. Safety

23. The remedial plan shall contain appropriate policies, staffing, staff training, and supervision to ensure the physical safety of youth from assaults by other youth and from excessive force by staff, including but not limited to the following:

(a) Policies regarding the circumstances (if any) under which facility staff may use pepper spray or similar chemical agents.

(b) The IDJJ shall maintain an adequate system of oversight and discipline which reasonably assures the proper and prompt investigation of, and where warranted appropriate action regarding, allegations of excessive force by staff against youth, of sexual misconduct by staff against youth, of staff encouraging youth to attack other youth, of staff not timely and appropriately acting to protect youth from attacks by other youth, and of any other staff misconduct towards or neglect of youth. All investigations and remedial actions shall be properly documented.

(c) When a youth seeks care from a health care provider, the health care provider shall confidentially ask the youth how they received their injury. If the health care provider suspects that the cause of injury is excessive force by staff, the health care provider shall preserve evidence and file an appropriate report.

(d) Staff shall document in writing all use of force by staff against youth, all violence by youth against youth, and all youth injuries. IYC management shall review all such documentation, and shall analyze it for patterns that may indicate staff misconduct, or the need to revise policy to prevent future injury.

(e) An adequate behavioral management program.

### 5. Continued commitment for lack of a community placement

24. The remedial plan shall provide for policies, staffing, and staff training and supervision to minimize the continued commitment of youth to IYCs solely because a community placement has not been secured for them.

25. The remedial plan shall provide policies, staffing, and staff training and supervision to improve re-entry planning, and to assist paroled youth in successful re-entry.

### 6. General provisions of the remedial plan

26. As to each of the subjects set forth above in parts II(B)(1) through II(B)(5) of this consent decree, and to the extent necessary to remedy any deficiencies identified by the experts, the remedial plan shall provide:

5

    (a) specific tasks, timetables, goals, programs, plans, strategies, and protocols to fulfill all obligations of the remedial plan and this consent decree;

    (b) sufficient numbers of adequately qualified and trained staff to fulfill all obligations of the remedial plan and this consent decree, including but not limited to senior and mid-level managers, psychiatrists, psychologists, social workers, nurses, other mental health professionals, general education teachers, special education teachers, vocational education teachers, other education professionals, youth and family specialists (sometimes called counselors), juvenile justice specialists (formerly called youth supervisors), leisure time activity specialists, aftercare specialists, and clericals;

    (c) sufficient services and resources of sufficient quality, scope, and variety to fulfill all obligations of the remedial plan and this consent decree;

    (d) adequate training, supervision, and (as needed) discipline of all staff;

    (e) an adequate system of continuous quality assurance and improvement;

    (f) adequate record-keeping; and

    (g) the adoption or revision, as needed, of IDJJ policies, procedures, protocols, and practices.

### III. COMPLYING WITH, MONITORING, AND ENFORCING THE REMEDIAL PLAN AND THIS CONSENT DECREE

**A. The defendant's affirmative compliance duties**

  27. <u>The defendant's duty to comply</u>. The defendant shall ensure that the IDJJ complies with all provisions of this consent decree and the remedial plan.

  28. <u>The defendant's annual compliance reports</u>. By July 1 of every year, the defendant shall file with the Court, and deliver to the monitor and the plaintiffs' counsel, an annual report describing in detail the specific actions the defendant will undertake during the following fiscal year, and that the defendant undertook during the prior fiscal year, to comply with the remedial plan and this consent decree.

**B. Monitoring**

  29. <u>The monitors</u>. The jointly appointed experts shall serve as monitors. The monitors shall independently monitor the IDJJ's compliance with this consent decree and the remedial plan, identify actual and potential areas of non-compliance with this consent decree and the remedial plan, mediate disputes between the parties, and bring issues and recommendations to the Court for resolution. The monitors shall visit each IYC at least once per year. The defendant shall compensate the monitors for their reasonable time and expenses.

30. <u>Substitution of a monitor</u>. If a monitor is unwilling or unable to continue to serve, then within 30 days, either:

(a) the parties shall jointly file with the Court the name of the agreed proposed substitute, subject to Court approval; or

(b) if the parties cannot agree upon the substitute, the parties shall each submit to the Court the name and qualifications of their respective proposed substitute, and the Court will select the substitute.

31. <u>The monitors' consultants</u>. The monitors may retain consultants. Before doing so, a monitor shall provide written notice to both parties. If a party objects, the party within seven days shall deliver written objections to the monitor and the other party. Within seven days after such delivery, the parties and the monitor shall meet and confer. If the parties and the monitor do not agree, either party or the monitor may file an appropriate motion with the Court. The defendant shall compensate the monitor for the reasonable time and expenses of such consultants.

32. <u>The monitors' annual compliance reports</u>. Within 180 days of entry of the final remedial plan, the monitors shall file with the Court, and deliver to the parties, a report regarding the status of defendant's compliance with the remedial plan and this consent decree, including the identification of any areas of non-compliance. The monitors may file additional reports at their discretion, but must file at least one report every twelve months.

33. <u>Monitoring by the plaintiffs' counsel</u>. The plaintiffs' counsel also shall monitor defendant's compliance with the remedial plan and this consent decree.

34. <u>The defendant's facilitation of monitoring</u>. To facilitate monitoring, the defendant shall:

(a) Provide the monitors and the plaintiffs' counsel each with one-day notice of the in-custody death or off-facility hospitalization of any youth.

(b) Provide the monitors and the plaintiffs' counsel each with access to all facilities, documents, information, staff, and youth of the IDJJ and of any person or agency contracting with the IDJJ to provide services to youth, provided that health, mental health, and substance abuse records are subject to the protective order in this case.

(c) Provide the monitors and the plaintiffs' counsel each, on a monthly basis, with the names of youths who, to the knowledge of IDJJ's administration, have been referred for delinquency or criminal prosecution as a result of incidents occurring while in IDJJ custody. These monthly reports shall also include the youth's age, race, mental health level, committing county, date of the alleged offense, a description of the alleged offense and the associated reportable incident report, and the status of the prosecution, if known to IDJJ's administration.

   (d) Comply with reasonable requests by both the monitors and the plaintiffs' counsel for any other information that is related to their review and evaluation of defendants' compliance with the remedial plan and this consent decree.

   (e) Allow the monitors and the plaintiffs' counsel each to conduct private, ex parte interviews of youth.

   (f) Allow the monitors to conduct private, ex parte interviews of the staff of the IDJJ and the IDJJ's contractors.

   (g) Allow the monitors to conduct unannounced visits to any IDJJ facility.

**C.** **Enforcement**

  35. *Process for enforcing compliance*. At any time, if a monitor believes that the defendant is or is reasonably likely to be out of compliance with any provision of the remedial plan or this consent decree, he or she shall promptly notify the defendant and the plaintiffs' counsel in writing. Likewise, at any time, if the plaintiffs' counsel believe that the defendant is or is reasonably likely to be out of compliance with any provision of the remedial plan or this consent decree, they shall promptly notify the defendant and the monitor in writing. Within seven days of such notice, the parties and the monitor shall meet and confer regarding this alleged non-compliance. If the parties and the monitor agree that there is non-compliance, and how to remedy such non-compliance, such agreement shall be submitted to the Court as an agreed order. If the parties and the monitor dispute whether there is non-compliance, and/or how to remedy such non-compliance, the monitor or the plaintiffs may move the Court for a new order finding non-compliance and ordering compliance.

## IV. GENERAL PROVISIONS

  36. *Definition of substantial compliance*. A facility is in substantial compliance in a subject area if any violations of the relevant remedial plan(s) are minor or occasional, and are neither systemic nor serious. However, if a serious violation of the remedial plan occurs, the facility is in substantial compliance if the facility promptly identifies the violation and develops and implements a timely and appropriate remedy that results in compliance.

  37. *End of monitoring*. When a facility is found to be in substantial compliance on an issue for one full year, and is found to remain in substantial compliance after review by the relevant expert(s) one year later, monitoring regarding that issue at that facility shall end, except that, for good cause, the monitors may continue such monitoring, subject to either party's request for Court review of the matter. Alternatively, either party may move the Court, upon a showing of good cause, for an order to continue such monitoring. In all events, such continued monitoring shall last for one additional year, subject to possible renewal as set forth in this paragraph.

  38. *Termination*. The remedial plan and this consent decree shall terminate when monitoring has ended for all issues and facilities. If the parties dispute whether the defendant has achieved such substantial compliance, either party may move the Court to resolve the dispute.

39. <u>Modification</u>. Either party may file a motion with the Court requesting a modification to the remedial plan or consent decree.

40. <u>Dispute resolution</u>. If any dispute arises under any aspect of this consent decree or the remedial plan, the parties shall attempt in good faith to resolve the dispute, prior to raising the matter with the Court.

41. <u>Ex parte communications</u>. The court-appointed experts and the court-appointed monitors may communicate ex parte with the parties and their counsel. If the court experts or the monitors provide anything to the Court, they must simultaneously serve copies to the parties. The experts and the monitors cannot meet with the Court without prior notice to the parties and an opportunity for the parties to be present.

42. <u>Youth confidentiality</u>. The court-appointed experts, the monitors, any consultants to the monitors, and the plaintiffs' counsel shall maintain the confidentiality of all information that they obtain, pursuant to this consent decree and the remedial plan, about individual youth, in compliance with the protective order in this case.

43. <u>Resolution of all claims</u>. This consent decree and the remedial plan shall constitute a final resolution of all claims, and only those claims, for injunctive relief actually set forth in the plaintiffs' complaint.

44. <u>Attorney fees, costs, and expenses</u>. Plaintiffs are entitled to their reasonable attorney fees, costs, and expenses for prosecution of this cause of action, and monitoring and enforcement of the remedial plan and this consent decree.

IT IS SO STIPULATED AND AGREED:

| For the plaintiffs: | For the defendant: |
|---|---|
| By: /s/ Camille Bennett | By: /s/Heidi Mueller |
| Date: December 8, 2017 | Date: December 8, 2017 |
| Benjamin S. Wolf<br>Camille Bennett<br>Lindsay S. Miller<br>Roger Baldwin Foundation of ACLU, Inc.<br>150 North Michigan Avenue, Suite 600<br>Chicago, IL 60601<br>(312) 201-9740<br><br>Maja C. Eaton<br>Kevin M. Fee, Jr.<br>Joseph R. Dosch<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>(312) 853-7000 | Heidi Mueller<br>Director of the Illinois Department of Juvenile Justice |

IT IS SO ORDERED:

By: _____

Date: 12/13/2017

United States District Court Judge