**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| R.J. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-7289 |
| | ) | |
| HEIDI MUELLER, | ) | Hon. Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |

**SEMI-ANNUAL JOINT STATUS REPORT (JULY 2018)**

This report is submitted pursuant to the Court's Order entered February 16, 2017 (Dkt. 188), which directed the parties to file a semi-annual report regarding those provisions of the Remedial Plan as to which Plaintiffs contend the Department of Juvenile Justice (the "Department" or "DJJ") is not currently in substantial compliance. On July 3, 2018, Plaintiffs' counsel provided a summary of Plaintiffs' preliminary positions as to areas in which the Department was currently not in compliance with the Remedial Plan and related Supplemental Orders. This report addresses the areas Plaintiffs' counsel identified for status update in the July 3 summary.

In 2017, Plaintiffs identified twenty-eight areas of contended non-compliance for the semi-annual report. In 2018, Plaintiffs have identified twenty-three areas.

This Joint Status Report explains the Department's efforts and progress in the identified areas since the Compliance Report filed on January 24, 2018 ("Compliance Report," Dkt. 228), followed by Plaintiffs' Responses as to same.

## REMEDIAL PLAN PART II: MENTAL HEALTH SERVICES

**Paragraph 4: Mental Health Staffing Levels and Qualifications**: DJJ shall establish appropriate staffing levels and qualifications of mental health professionals.

**DJJ Status:** On May 10, 2016, this Court entered an order outlining the required mental health staff to youth ratios for the Department's facilities and required qualifications for mental health staff. (Dkt. 165.) The Department is meeting the established mental health staffing levels at IYC-Harrisburg, IYC-St. Charles, and IYC-Warrenville. IYC-Chicago has hired a new mental health professional, who is currently awaiting background clearance, and will meet staffing levels when this individual begins work.

The mental health staffing and staff licensures for each facility are specified in the table below.

| Facility | Mental Health Staffing Levels |
|---|---|
| IYC-Chicago | 1 Treatment Unit Administrator; 4 full-time mental health staff; 1 vacancy<br>All have licensure. |
| IYC-Harrisburg | 1 Treatment Unit Administrator; 11 full-time mental health staff; 2 vacancies<br>All have licensure. |
| IYC-Pere Marquette | Treatment Unit Administrator- Vacancy (1 staff temporarily assigned to this position); 1 full-time mental health staff; 1 vacancy due to temporary assignment<br>All have licensure. |
| IYC-St. Charles | 1 Treatment Unit Administrator; 9 full-time mental health staff; 3 vacancies.<br>3 with no licensure (working towards licensure) |
| IYC-Warrenville | 1 Treatment Unit Administrator; 5 full-time mental health staff; no vacancies.<br>All have licensure |

All mental health professionals have one of the licensures listed in the court's May 10, 2016 order, with the exception of three mental health professionals at IYC-St. Charles. The Department hired three individuals working to obtain their licensure and are providing them up to one year to complete requirements. One has completed all requirements and is waiting for the license to be mailed, one will complete all requirements by the end of August, and one will take the exam and complete all requirements by the end of the year.

Regarding the vacant Treatment Unit Administrator position at IYC-Pere Marquette, the Parties and Mental Health Monitor met on March 7, 2018 and agreed that a candidate with a Master's degree in psychology or social work, along with a clinical license, would be appropriately qualified for the position and that a PhD. was not required. The Department is working with Central Management Services to edit the position description with revised qualifications.

2

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests. That data, as of the end of April, indicated that the Department had not been meeting the "established mental health staffing ratios" at IYC St. Charles or at IYC Harrisburg since the beginning of 2018, with IYC Chicago having also fallen out of compliance more recently. Based upon the Department's representations, it appears that the staffing deficiency at IYC Harrisburg has been remedied and that at IYC Chicago is in the process of being remedied. Compliance under the Consent Decree however requires continuous compliance. Dkt. 277, ¶¶ 36-37.

Similarly, while understanding that working with Central Management Services is challenging, Plaintiffs note that there is no timeframe provided within which the Department expects to remedy the vacant Treatment Unit Administrator position at IYC Pere Marquette.

**Paragraph 5: Mental Health Records and Hospitalization**: DJJ shall implement uniform policies in all facilities to ensure (a) that the DJJ timely requests hospital and other outside mental health records for youth and (b) adequate identification and assessment of youth with significant mental health needs potentially in need of outside hospitalization, and as appropriate facilitation of such hospitalization.

**DJJ Status:** Regarding requests for hospital and outside mental health records for youth during the admissions process, Administrative Directive 05.05.105 details the process for Reception and Classification staff to follow during the intake process. Reception staff document prior admissions to other correctional or psychiatric facilities on the "Review of Youth's Treatment History" form and submit this form to the Health Care Unit. Health Care staff then request these records. The Department has identified a lack of consistency sending the records requests at IYC-St. Charles and will conduct additional quality improvement reviews this fall.

Regarding identification and assessment of youth with significant mental health needs, the Department outlined a plan forward in the Parties' Joint Progress Report as to Priority Items Identified ("Progress Report") (Dkt. 237) to reassess and improve its mental health services system in accordance with the Mental Health Monitor's guidance. The Department shared the plan with the Mental Health Monitor and received no objections or feedback in response. The Department has taken the following steps to ensure adequate identification, assessment, and treatment for youth with significant mental health needs:

- The Department's Child and Adolescent Psychiatrist is conducting a census of youth psychiatric diagnoses and medication profiles to adjust treatment when necessary. Dr. Maskel is reviewing diagnoses as part of her supervision of the psychiatrists treating youth at the facilities. On-site reviews are scheduled at IYC-Harrisburg and IYC-Warrenville by the end of July, and the initial review of all facilities will be completed by the end of 2018 with quality improvement activities and supervision ongoing. Examples of her review of diagnoses include the following:
  - Differentiating Disruptive Mood Dysregulation Disorder from Bipolar Disorder;
  - Appropriately diagnosing ADHD;
  - Paring down diagnostic lists when symptoms are fully accounted for under more primary diagnoses to sharpen the focus of treatment;

3

o Reviewing the use of certain atypical antipsychotic medications to ensure they are aligned with best practice treatment for adolescents, including review of medication regimes for possible increased use of Selective Serotonin Reuptake Inhibitor (SSRI) agents (instead of antipsychotics) which have significantly less long term negative side effects; and

o Reviewing stimulant medications and directing treating psychiatrist to use alternatives with less potential for abuse or diversion.

- The Department is revising its policies based on the Mental Health Monitor's guidance to ensure that staff review youth mental health levels when certain indicators are present, identify factors indicating the need for additional support, adjust treatment protocols when necessary, and utilize appropriate interventions so youth receive appropriate services. Drafts will be shared with Plaintiffs' Counsel and the Monitors, and final versions will be completed by September 30.

- The Department continues its discussions with a residential treatment provider to develop a long-term treatment unit for DJJ youth with significant and persistent mental health needs. This provider recently modified an existing program to provide treatment to one of DJJ's highest needs youth, but unfortunately, the placement was unsuccessful and the youth returned to DJJ's custody. The Department is contacting other treatment providers serving individuals with high-end psychiatric needs to identify other potential partners. This remains a key focus for DJJ.[1]

Finally, the Department's policy for Emergency Mental Health Services (A.D. 04.04.102) is being implemented at all youth centers. DJJ's mental health department tracks all youth experiencing a mental health crisis on a monthly crisis log. The Department follows the state-wide Illinois Services Screening, Assessment and Support Services (SASS) protocol in collaboration with the Illinois Department of Children and Family Services (DCFS), the Department of Healthcare and Family Services (HFS), and the Department of Human Services (DHS), for youth psychiatric hospitalization.

**Plaintiffs' Response:** Plaintiffs identified the first requirement of this section of the Remedial Plan (Part II, para. 5(a), requiring timely requests for hospital and mental health records) as an area of non-compliance based upon the lack of any data enabling evaluation of compliance. (Plaintiffs had been told that this would be a subject of Administrative Directive audits but the audit reports received by Plaintiffs did not address this issue.) Based upon the Department's response, it now appears that the Department's audits have in fact identified a failure in this area at IYC St. Charles.

As to subsection (b), Plaintiffs contend that the Department in not in compliance in that there is no current ability to place youth in psychiatric hospitalization. The remainder of the

---

[1] In the hearing on June 25, 2018, the Department agreed to contact the Cook County Juvenile Temporary Detention Center (JTDC) to inquire regarding their contracted residential treatment provider for youth with significant psychiatric needs. The Department's Deputy Director of Programs contacted the JTDC Mental Health Program Director and learned that the JTDC does not have a contract for residential psychiatric treatment, and the JTDC relies on the Illinois Screening, Assessment and Support Services (SASS) process for psychiatric hospitalization and the John Stroger Hospital Emergency Department for acute psychiatric emergencies. The SASS process is also utilized by IDJJ.

initiatives described by the Department in this section, in Plaintiffs' view, do not bear on this requirement (they have been previously reported to the Court and are pertinent to mental health services more generally).

**Paragraph 6: Individualized Mental Health Treatment Plans and Coordination of Treatment**: DJJ shall ensure uniform policies and procedures for mental health treatment plans and coordination of treatment are in place in all facilities, including family therapy as appropriate.

**DJJ Status:** The Department has developed and implemented uniform policies and procedures for mental health treatment plans and coordination of treatment at all facilities. To continue improving its practice, as noted above, the Department outlined a plan forward in the Progress Report (Dkt. 237) to reassess and improve its mental health services system in accordance with the Mental Health Monitor's guidance. The Department is revising its policies relating to mental health treatment as follows:

- The Department issued a policy bulletin for Providing Developmentally Appropriate Services to Younger Youth, attached as Exhibit A. The policy was reviewed by the Mental Health and Safety and Welfare Monitors, and their feedback was incorporated in the final version. The policy will improve mental health treatment plans and coordination of treatment for youth age 13 and 14 specifically.
- As described in the Progress Report (Dkt. 237) and above (Part II ¶ 5), the Department is revising its policies based on the Mental Health Monitor's guidance. Drafts will be shared with Plaintiffs' Counsel and the Monitors, and final versions will be completed by September 30. These policies will improve mental health treatment plans and coordination of treatment for all youth.

The Department is continuing to work on its family therapy and family engagement, which are being tracked monthly in the Mental Health Date Reports and shared with the Mental Health Monitor and Plaintiffs' Counsel. Mental health staff are also completing Monthly Family Therapy Checklists to document efforts and obstacles related to engaging youths and their family in family therapy. Samples of these checklists are available for Plaintiffs' counsel and the Mental Health Monitor to review. The Department's consultant for family engagement and family therapy is reviewing the data derived from these checklists and will submit findings and recommendations to the Department by August 30.

**Plaintiffs' Response:** These provisions require monitor assessment. Plaintiffs identified these as areas of non-compliance based upon the Mental Health Monitor's expressed concerns about assessment of youth mental health needs and DJJ's own plans for reevaluation of its practices. Consequently, any assessment of compliance with (a) and (b) must await the Mental Health Monitor's 2018 report. Finally, the Monitor's last assessment of (c) indicated progress but not yet full compliance.

**Paragraph 7: Medication Consent**: DJJ shall develop revised forms to ensure appropriate inform consents for administration of psychotropic medications.

**DJJ Status:** The Department has been utilizing a medication consent form approved by the Mental Health Monitor since January 31, 2017. The Department's Health Care Unit Administrators for each facility have been reviewing the forms and providing the Department's Medical Director with quarterly reports on compliance. When the Mental Health Monitor visits facilities this summer, the Department will direct him to location of these consents in the youth medical file and will review the documentation with him to ensure it meets his expectations.

**Plaintiffs' Response:** This provision requires monitor assessment. Plaintiffs identified this as an area of non-compliance based upon the Mental Health Monitor's previous assessments of non-compliance with this paragraph.

**Paragraph 8: Medication Management**: DJJ shall review and revise, in consultation with the DJJ Medical Director and Child and Adolescent Psychiatrist, its policies and procedures relating to medication management.

**DJJ Status:** The Department revised its Administrative Directive on Non-Emergency Mental Health Services (04.04.101) to include provisions regarding follow-up medication evaluations for youth receiving psychotropic medication and protocols for stimulant medication treatment for youth diagnosed with Attention Deficit Hyperactivity Disorder. The revised policy was emailed to Plaintiffs' Counsel and the Mental Health Monitor on January 31, 2018. The Department will ask the Mental Health Monitor to review it during his monitoring visit to ensure it meets his expectations, and a final draft will be adopted before September 1, 2018.

**Plaintiffs' Response:** This provision requires Monitor assessment. Plaintiffs identified this as an area of non-compliance based upon the Mental Health Monitor's previous assessments of non-compliance with this paragraph.

**Paragraph 10: Youth Seeking Immediate Mental Health Care**: DJJ shall promptly fulfill requests by youths who ask to immediately speak with a mental health professional.

**DJJ Status:** The Department tracks the mental health referrals it receives from youth, from staff, and the number of those referrals responded to on the same day, within 24 hours, and within 5 business days of the request. Requests are tracked in three separate categories:
- Crisis referrals are submitted by staff for urgent needs.
- Non-urgent requests can be made by staff by phone or incident reports.
- Urgent and Non-urgent requests can be made by youth or staff using the Mental Health Service Referral form. The referral form is utilized extensively at IYC-Warrenville, while the other facilities primarily refer non-urgent requests by phone or incident report. When received, mental health staff review the form to determine whether the request is urgent or not.

The following chart shows the data on mental health referrals for June 2018:

| Facility | Crisis Referrals | | Mental Health Service Referral Forms | | | |
|---|---|---|---|---|---|---|
| | Number | Percent responded to on same day | From Staff | From Youth | Percent responded to on same day | Percent responded to w/in 5 days |
| IYC Chicago | 16 | 100% | 3 | 11 | 73% | 100% |
| IYC Harrisburg | 7 | 100% | 0 | 5 | 20% | 100% |
| IYC Pere Marquette | 8 | 100% | 6 | 0 | 100% | N/A |
| IYC St Charles | 74 | 100% | 5 | 0 | 100% | N/A |
| IYC Warrenville | 30 | 100% | 1 | 97 | 100% | N/A |

During the month of June, every crisis referral was responded to on the same day. The percentage of Mental Health Referral forms responded to on the same day varies by facility. The data does not distinguish between urgent and non-urgent referrals in this category. The Department believes that the 20% of Mental Health Referral forms at IYC-Harrisburg responded to the same day were urgent in nature, and all Mental Health Referral forms at all facilities were responded to within five days.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon youth interviews and upon the Mental Health Monitor's prior assessments. Plaintiffs believe that there are ongoing problems with compliance with this provision at both IYC St. Charles and IYC Harrisburg, and possibly IYC Chicago as well. There is an inherent problem with the data the Department uses to assert compliance here in that what youth complain of is that requests for mental health services are ignored (and thus presumably not documented). The Mental Health Monitor previously assessed non-compliance with this provision at IYC St. Charles, and questionable compliance at IYC Harrisburg and IYC Chicago.

## REMEDIAL PLAN PART III: EDUCATION SERVICES

**Paragraph 1: Full-Time, Full-Day Instruction**: DJJ shall provide full-time, full-day instruction on all scheduled school days in each facility.

**DJJ Status:** Since January, the Department has continued to provide instruction on all scheduled school days for at least five hours per day at IYC-Pere Marquette and IYC-Warrenville without issue. At IYC-Harrisburg, youth generally received full-time and full-day instruction but encountered partial-day cancellations during the month of May. The cancellations were due to short-term educator shortages and power outages. Both issues have been resolved and full-time, full-day instruction continues at that facility.

At IYC-Chicago, an educator shortage during this school year resulted in half-day school on all scheduled school days. One new teacher will be starting on August 1, and the Department

anticipates full-day school resuming on September 1 when another staff member returns from leave.

At IYC-St. Charles, persistent shortages in educators and security staff have led to a continued lack of compliance with this requirement. As of July 9, 2018, each cottage is scheduled to attend school for a half-day on all scheduled school days, either in the morning or afternoon. Youth and Family Specialists visit the school daily and mental health groups are being conducted in the school building to provide additional support for youth and create a stronger staff presence. The school is offering extended work schedules and overtime compensation to educators and will be scheduling additional blocks of class time in the evening to maximize youth opportunities for school beginning August 1. The Department's efforts to increase security staff (detailed in Part V ¶ 4) and educator staff (detailed in Part III ¶¶ 2 and 3) at IYC-St. Charles are critical to providing full-day school.

The Department is continuing to expand its dual-credit career and technical education (CTE) programs for youth in high school, and its post-secondary vocational and collegiate programming for high school graduates. Updates include the following:

- At IYC-St. Charles, the Lake Land College program currently offers courses in custodial maintenance, construction occupations, and business applications. A horticulture course will be offered when the educator vacancy is filled. The program is available to post-secondary students for college credit and to high school students for dual-credit (two slots per course). Youth who successfully complete these Lake Land College programs have an opportunity to earn Lake Land College certificates for these post-secondary vocational education programs.
- Also at IYC-St. Charles, the Department recently hired two new CTE teachers and started a Business Applications Course teaching computer technology. Youth completing the course will have the opportunity to take the Certiport assessment for the Microsoft Office Specialist (MOS) certification.
- At IYC-Harrisburg, the Lake Land College program is fully-staffed and offers courses in custodial maintenance, building maintenance, culinary arts, and horticulture. The program is currently available for post-secondary students and will be expanding to be available for high school students with an opportunity for dual credit. One high school student begins the custodial maintenance course on July 23. Youth who successfully complete these Lake Land College programs have an opportunity to earn Lake Land College certificates for these post-secondary vocational education programs.
- Also at IYC-Harrisburg, the District offers a building maintenance course and a culinary arts course for high school students. Youth enrolled in the building maintenance course sit for the OSHA 10 certification and youth enrolled in the culinary arts course sit for the ServSafe Food Handler certification upon completion.
- At IYC-Pere Marquette, the Department's CTE teacher offers high school students an AutoCAD course, which features software applications for drafting and design. Additionally, a construction course is available to GED-eligible high school students and high school graduates through a joint partnership with Lewis & Clark Community College and Youth Build.

- At IYC-Chicago, three youth are attending Malcolm X Community College and taking courses in the summer session. This opportunity is currently available only for post-secondary students.

Continuing to expand dual-credit and post-secondary opportunities at all facilities remains a key area of focus for the Department. For IYC-Chicago and IYC-Warrenville, the Department recently entered into a Memorandum of Understanding with Larry Barber College to provide post-secondary barbering and cosmetology education programming. Efforts are underway to obtain the necessary equipment in order to begin these programs in September. Additionally, at IYC-Warrenville, the College of DuPage is planning to conduct two classes, worth five credit hours, for up to eight youth at the facility this fall. The classes will be dual-credit and available to high school and post-secondary students.

A chart summarizing the number of youth participating in post-secondary and collegiate programs appears below.

Youth in Continuing Education

|  | Post-Secondary | Collegiate |
|---|---|---|
| *IYC Chicago* | 0 | 3 |
| *IYC Harrisburg* | 9 | 9 |
| *IYC Pere Marquette* | 20 | 0 |
| *IYC St. Charles* | 12 | 12 |
| *IYC Warrenville* | 0 | 0 |
| **IDJJ Total** | **41** | **24** |

Regarding alternative educational programming for youth in the Reception and Classification (R&C) units, youth at IYC-Harrisburg participate in educational assessments, orientation, and introductory educational programming while in R&C before transferring to general population. At IYC-Warrenville, youth only remain in R&C for a few days and receive educational programming immediately upon transfer to general population. Youth at IYC-St. Charles do not receive educational programming during R&C, and this remains and area for improvement.

On scheduled "not-in-attendance" (NIA) days at the facility, school staff members participate in professional development and other activities as directed by the school principal. Youth at the facility are scheduled for programming by the facility administration. Examples of the alternative educational programming offered during the most recent week of NIA days include the following:
- Youth nearing completion of credits at IYC-Harrisburg received instruction and tutoring.
- Youth at IYC-Pere Marquette participated in Prison Rape Elimination Act (PREA) training, a Youth Build presentation on career pathways, Independence Day trivia, and an art show.
- Youth at IYC-St. Charles participated in LVI tutoring and GED testing.
- Youth at IYC-Warrenville participated in Debate Club, Storycatchers Theater, the Pawsitive Futures dog training program, and wellness groups.

**Plaintiffs' Response:** Plaintiffs identified these as areas of non-compliance based upon site visits and youth interviews and also based upon data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests. As to the full-day, five hour education requirement for non-graduates, there is persistent, long-term non-compliance at IYC St. Charles and there has been non-compliance of at least several months' duration at IYC Chicago. In addition, although the Department asserts that IYC Harrisburg experienced only "partial-day cancellations during the month of May [ ] due to short-term educator shortages and power outages," youth reported the same problems (for the same reasons) when Plaintiffs' counsel were on site in late March.

As to subparagraph (a) (the graduate education 2 ½ hour requirement), the Education Monitor assessed non-compliance with this provision in 2017; based on youth interviews, there is current non-compliance at IYC St. Charles, and based on the staffing data provided to Plaintiffs it appears likely that there is non-compliance at other facilities as well, including IYC Harrisburg. Plaintiffs note that the availability of programs to some youth does not guarantee that the 2 ½ hour requirement is met as to all youth entitled to these services.

Plaintiffs are nevertheless heartened by the expansion of vocational and CTE programming described by the Department. The next step should be a method for tracking enrollments and availability of the programs to youth who wish to take advantage of them.

As to subparagraph (b) (programming in R&C), Plaintiffs note that the parties agree that there is non-compliance at IYC St. Charles. Plaintiffs leave whether the "alternative educational programming" requirement is met by current practices in R&C at IYC Harrisburg and IYC Warrenville for the Education Monitor's review and evaluation.

Similarly, whether existing programming on NIA (not in attendance) days satisfies the Remedial Plan is an issue for Monitor assessment.

**<u>Paragraphs 2 and 3: Teacher Staffing Levels and Other Education Staffing Levels</u>**: DJJ shall create and fill additional teacher positions, and DJJ shall hire additional education staff, as specified in the July 17, 2014 Supplemental Order.

**DJJ Status:** The Department seeks to maintain student to teacher ratios of 10:1 or lower for general education and 6:1 or lower for special education. The student-to-teacher ratios on the last day of each month since July 2017 are reflected in the tables below. In general, the Department is meeting the ratios for general education students at every facility, but is only meeting the ratios for special education students at IYC-Pere Marquette and IYC-Warrenville. IYC-Harrisburg is close to meeting the ratio for special education students. IYC-Chicago and IYC-St. Charles are severely under-staffed with special education teachers and are not meeting the ratios.

General Education Student to Teacher Ratio

| | 7/17 | 8/17 | 9/17 | 10/17 | 11/17 | 12/17 | 1/18 | 2/18 | 3/18 | 4/18 | 5/18 | 6/18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | 7.8 | 7.7 | 5.4 | 10 | 10.3 | 7.7 | 17 | 18.5 | 14.3 | 9.8 | 7.8 | 8.8 |
| Harrisburg | 4.4 | 5.4 | 4.7 | 6.3 | 6.8 | 7.1 | 7.4 | 8.1 | 7.6 | 4.6 | 5.2 | 5.7 |
| Pere Marquette | 4.3 | 4.3 | 2 | 1.6 | 2 | 2.2 | 2 | 3.5 | 3.5 | 3.6 | 4.8 | 3.6 |
| St. Charles | 16.6 | 17.6 | 13.2 | 11.6 | 6.6 | 5.1 | 3.6 | 5 | 7.2 | 6.5 | 5.5 | 5.4 |
| Warrenville | 3.3 | 3.3 | 3.8 | 4.5 | 5.8 | 5 | 4.6 | 5.2 | 6.2 | 4.8 | 4.0 | 5 |
| IDJJ Average | 7.1 | 7.7 | 5.7 | 6.3 | 6.1 | 5.5 | 5.5 | 6.7 | 7.4 | 5.6 | 5.4 | 5.7 |

Special Education Student to Teacher Ratio

| | 7/17 | 8/17 | 9/17 | 10/17 | 11/17 | 12/17 | 1/18 | 2/18 | 3/18 | 4/18 | 5/18 | 6/18 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chicago | 5.0 | 7.3 | 6 | 6.3 | 7.7 | 7 | 12.5 | 12 | 27 | 27 | 19 | 21 |
| Harrisburg | 8.0 | 9.8 | 9.6 | 8.6 | 9.2 | 9.2 | 9.6 | 9.6 | 8 | 9.6 | 8.4 | 7 |
| Pere Marquette | 4.3 | 4.3 | 7 | 8 | 8.5 | 8.5 | 4.3 | 2.7 | 2.7 | 2.7 | 2.7 | 2.7 |
| St. Charles | 8.7 | 9 | 22 | 22 | 28 | 54 | 61 | 52 | 50 | 42 | 28 | 27 |
| Warrenville | 4.3 | 4.3 | 4.3 | 4 | 5.5 | 4 | 5.5 | 3.3 | 2.7 | 6.3 | 4.7 | 4.7 |
| IDJJ Average | 6.3 | 7.3 | 9.1 | 8.9 | 10.9 | 10.7 | 12.2 | 10.1 | 10.1 | 11.1 | 9.9 | 12.48 |

As of July 15, 2018, all facilities are currently staffed with floater/substitute educators, school counselors, library associates, and principals. The school at IYC-Pere Marquette is fully staffed for all positions. The School District has the following vacancies at the other four facilities (as indicated by the symbol √):

| IYC | General Educator | Special Educator | CTE Educator | School Psychologist | Special Education Resource Coordinator | Office Coordinator |
|---|---|---|---|---|---|---|
| CHI | √ (2) | √ (3) | √ Pending | | | |
| HRB | √ (1) | √ (1) | | | | |
| STC | √ (4) | √ (4) | | | | |
| WRV | √ (1) | √ (1 as of 7/25, will be 2 on 8/1) | √ (1) | √ Pending | √ | √ |

The Department is working to fill educator positions with temporary employees while the hiring process for permanent educators is underway. The Department entered into a contract with a staffing company, Delta-T, and one temporary educator is currently in the onboarding process to assist IYC-St. Charles. Additionally, IYC-St. Charles created two contract positions for temporary educators and one individual is in the hiring process. These temporary educators will remain in place until the positions are filled permanently.

Generally speaking, the Department has seen progress in its recruitment of school staff members and streamlining the hiring process. Continued efforts to improve were detailed in the Progress Report and remain ongoing (Dkt. 237). Additionally, the Department is working to improve staff retention and sees this as a critical focus for the upcoming year. Staff retention efforts include the following:

- The Department is conducting exit interviews with staff leaving the agency to identify trends and create solutions that may improve working conditions for other staff. The Superintendent has identified two main trends in the reasons for staff resignation – salary and safety. The Department's efforts to address salary parity are described in the Progress Report (Dkt. 237), and the efforts to improve safety are related to the security staffing efforts described in Part V ¶ 4.
- At IYC-Chicago, the facility Superintendent and school Principal have been meeting weekly to discuss operational and safety issues that led to educator resignations in 2017. The school Principal reports positive progress and improved job satisfaction among her teachers.
- The school district trained 16 staff members, including the school counselors and administrators, in May on the practice of restorative justice peace circles. The schools began implementing peace circles to improve staff communication in July. In the future, the schools will utilize peace circles as a conflict resolution tool to improve relationships between educators and youth, and enhance positive communication among staff.
- The school district has convened a Curriculum Committee to establish a leadership opportunity for educators desiring upward mobility and to incorporate educator input into the development of the school district's curriculum. Members of the curriculum committee represent each school and participate in monthly telephone conferences and quarterly in-person meetings in Springfield.
- Every school is convening a School Improvement Team, consisting of school staff and at least one non-educator (such as security staff) as an avenue for listening to staff concerns and suggestions, and working to solve issues at the local level. The Department received recommendations from two consultants providing professional development to educators during the past two years. These recommendations are being utilized as the "blueprints" for the School Improvement Teams' work, focusing in large part on improving staff communication and cooperation.

**Plaintiffs' Response:** Plaintiffs identified these as areas of non-compliance based upon data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests and also based upon site visits/youth interviews. There are significant staffing problems at IYC St. Charles and IYC Chicago, as reflected in the discussion above about provision of services. In addition, whether special education services are being provided as required by IEPs requires assessment by the Education Monitor, especially in the face of anecdotal reports that there are gaps in these services at each of the large facilities.

Finally, Plaintiffs note that although efforts continue to be made to streamline the hiring process, progress remains limited.

**Paragraph 4: Substitute Teacher Policy**: DJJ shall create and implement a plan to provide for certified substitute teachers.

**DJJ Status:** DJJ has hired permanent "floater" teachers at all facilities. The Department acknowledges that it will not experience the benefit of these positions until every school has a full complement of teachers.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests and upon the Education Monitor's prior assessments. As of the most recent data received, there was no "floater" teacher in place at IYC St. Charles, so this is evidently a recent improvement. Whether the "floater" positions are sufficient to "minimize the impact of teacher absences" as this provision mandates requires assessment by the Education Monitor, *inter alia*.[2]

**Paragraph 5: Modified School Calendar:** DJJ shall implement a modified school calendar.

**DJJ Status:** The Education Monitor has previously expressed concern with teachers' ability to work on non-instructional days and take vacation during times of the year where school is in session. DJJ anticipates that when fully staffed, the floater teachers in place will sufficiently cover teacher use of benefit time on scheduled school days.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon the Education Monitor's prior assessments. Assessment of compliance with this provision must be made by the Education Monitor.

**Paragraph 6: Blended Instruction:** DJJ shall ensure that it provides both traditional classroom instruction and web-based instruction, individually tailored to students' needs.

**DJJ Status:** All facilities provide web-based instruction through the Connexus (formerly GradPoint) program. To enhance traditional classroom instruction, the District launched a Project Based Learning program in January 2017 and the schools continue focusing on implementation. All facilities with the exception of IYC-St. Charles are adhering to their calendars for thematic units, and the lessons for each subject connect back to the theme across the curriculum.

Additionally, the schools at IYC-Harrisburg, IYC-Chicago, and IYC-Warrenville implement traditional classroom instruction one afternoon per week, and IYC-Pere Marquette implements traditional classroom instruction one full day per week. During this time, educators lead project-based learning lessons tied to the school's monthly thematic unit.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon the Education Monitor's prior assessments. Assessment of compliance with this provision must be made by the Education Monitor; his most recent assessment was partial compliance.

**Paragraph 7: Curriculum:** DJJ shall provide an academic curriculum sufficient for required instruction for every youth without a high school diploma or GED.

---

[2] Consistent improvement in education services will also indicate this.

**DJJ Status:** DJJ's curriculum includes instruction in all subjects required by state law in order to earn a high school diploma and in all subjects required for preparation to take the GED exam. The Department's current offerings in Career and Technical Education for youth in high school and post-graduation are described in Part III ¶ 1.

This year the DJJ School Board, District #428, developed a manual of school district policies based on the Illinois Association of School Boards' Policy Reference Education Subscription Service sample policies. The manual includes a chapter on Instruction with policies for curriculum development, curriculum content, library programs, guidance counseling, and other topics. The School Board intends for the policy manual to be a roadmap for building the quality of the educational program at DJJ and will be rolling out the manual after its adoption on July 20.

The Department is working to engage a consultant with experience in correctional settings to build a "soft skills" curriculum as part of its blended learning model. The curriculum will include 25 lessons focused on self-development, achieving personal goals, and building interpersonal skills. The Department anticipates implementing the new program by the end of 2018.

The Department continues its partnership with Literacy Volunteers of Illinois (LVI) who provide literacy tutoring for youth at IYC-Chicago, IYC-Warrenville, IYC-St. Charles and IYC-Harrisburg. The Department's Director of Special Education developed a list of priority youth for tutoring services at IYC-St. Charles to supplement the educational program for youth receiving half-day school. An LVI tutor works one-to-one with youth, records the amount of tutoring time spent with the youth, and adds any additional narrative information, as needed. The tutoring sessions are scheduled for a minimum of 30 minutes, but may occur up to 60 minutes, and a youth may be tutored multiple times per week.

Additionally, DJJ teachers have been trained to use the Reading Horizon's curriculum as an intensive reading intervention for students whose reading fluency and comprehension are below grade level and whose assessment scores place them in the bottom quartile for reading. The District's Curriculum Committee recommended replacing Reading Horizon's with another reading intervention program and the Department will be moving forward with any required procurement processes to purchase this fall. The Curriculum Committee also is working to identify a math intervention program for purchase and implementation next year, but is struggling to find one appropriate for use with an older youth population rather than primary grades.

Finally, the Department purchased ten Study Buddy devices for each facility. Study Buddy is a handheld personal learning device that allows youth to watch a lesson teaching a concept, answer questions and receive feedback, and participate in a quiz to measure progress. The Department intends to use Study Buddy for independent reading, math, and GED preparation practice and for use in the LVI tutoring program.

**Plaintiffs' Response:** Plaintiffs identified these as areas of non-compliance based upon site visits and youth interviews and also based upon information received from other advocates. Plaintiffs do not dispute that the Department's curriculum covers all subjects required for high school diplomas/GEDs; however, it appears that the general availability of career and technical education and vocational curriculum requirements of this provision have not yet been met, and likewise that there is non-compliance with the literacy instruction requirement given the dependence upon volunteer services.

**REMEDIAL PLAN PART IV:  USE OF CONFINEMENT**

**Paragraph 1: Confinement and Restricted Movement Policy**:  DJJ shall rewrite its policy regarding use of confinement and restricted movement to include the following features: (a) Limits on confinement for behavior management; (b) Limits on mental health crisis confinement; (c) Limits on investigative confinement; (d) Limits on confinement for transfer to DOC; (e) Limits on medical confinement; (f) Other confinement prohibited; (g) Periodic visual inspections; (h) Appropriate Services; (i) Process for entering, continuing, and exiting confinement or restricted movement; (j) Documentation; (k) Restricted movement on other living units.

**DJJ Status:** The Department rewrote its confinement policy and implemented a revised version in 2017.  The Department is in the process of revising its confinement policy and forms again to further improve its practices relating to confinement.  Within the next few weeks, the draft policies and forms will be shared with Plaintiffs' Counsel and the Monitors for the second time and calls will be scheduled to obtain additional feedback and reach an agreement.

The Department's Deputy Director of Operations continues conducting quarterly site visits to review confinement decision forms, logs, and notifications.  The Deputy Director determined that all facilities are in compliance with the confinement decision forms, with the exception of IYC-St. Charles, but the information on the forms can be improved.  At IYC-St. Charles, the facility has demonstrated improvement by using the confinement decision forms more consistently.  Upcoming inspections at all facilities will include updates based on previously-identified issues and will be done by the end of August.

An area of focus for the Department is auditing each facility's compliance with its program schedules to ensure youth receive the amount of programming they should.  More information about these efforts was provided in the Progress Report (Dkt. 237).

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon site visit and youth interviews, upon data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests, and upon prior assessments by the Monitors. This is currently an area of significant Monitor concern and focus and any full assessment must await the Monitors. Plaintiffs acknowledge that a policy has been created and revised in accordance with this section; however, policy creation is not sufficient to meet the broader requirements as to limitation of confinement in the settlement (as indicated by the Safety and Welfare Monitor's assessment of partial compliance with this provision in the last report, as well as the Mental Health Monitor's identification of problematic practices in this area in his last report).

Anecdotally, and based upon review of the Operational Site Visit Reports and confinement logs, there have been significant issues as to confinement at IYC St. Charles and IYC Harrisburg, as well as lesser issues at IYC Chicago and IYC Warrenville (as to inspection requirements during the duration of confinement).

**Paragraph 2: Confinement Liaison**: DJJ shall develop and implement policies and procedures requiring a youth and family specialist or other non-security staff member to be present during the day shift at each confinement unit that has at least one youth in confinement.

**DJJ Status**: This requirement is the subject of ongoing conversations with the Safety and Welfare Monitor and is addressed in the revised confinement policy shared with Plaintiffs' Counsel. The Department seeks to revisit the confinement liaison requirement in light of the significantly diminished use of confinement units and need to align staff and resources toward ensuring the best possible program services. The Department is proposing that a Juvenile Justice Specialist Supervisor or trained crisis team member, not involved in the incident, be responsible for meeting with the youth and consulting with a Youth and Family Specialist or mental health professional when needed.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon prior Monitor assessments, and Plaintiffs defer to the Monitors as to whether this provision should be modified.

## REMEDIAL PLAN PART V: SAFETY AND GENERAL ISSUES

**Paragraph 1: Comprehensive Treatment Model:** DJJ shall develop and implement a strategic plan for an evidence-based or evidence-informed comprehensive treatment and rehabilitation model to be used for youth in all DJJ facilities, including but not limited to youth in special treatment units and for juvenile sex offenders.

**DJJ Status:** The Department has worked to build its comprehensive treatment model in two key areas over the past few months. First, as detailed in the Department's Progress Report (Dkt. 237), the Department expanded SPARCS treatment at each facility. Implementation of the expansion is now complete, and all facilities are operating one to two additional groups, with the exception of IYC-Warrenville which utilizes a different therapy model to address trauma needs. The Department is now working to train staff on utilizing SPARCS terminology across practices and departments to reinforce the youth's skill development when outside of the mental health groups.

Second, the Department is focusing on enhancing the use of targeted and intensive behavioral interventions for youth in need of additional support. At IYC-St. Charles and IYC-Harrisburg, the Department is working to ensure that you with persistent behavior issues, placed on the alternative behavior units, receive carefully-crafted Intensive Intervention Plans. The Department's Deputy Director of Programs will be conducting additional training on intervention plans in the fall. Additionally, as described in the Progress Report (Dkt. 237), a new program plan for the Alternative Behavior Unit at IYC-St. Charles is being implemented, and the

Department looks forward to the Safety and Welfare Monitor's assessment after her monitoring visits this summer.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon prior Monitor assessment as well as upon Plaintiffs' counsel's own perceptions during site visits and information review that a functional comprehensive behavioral model within the Department is still a work in progress. This provision requires Monitor assessment. The Safety and Welfare Monitor's most recent assessment as to this provision was partial compliance, and the Mental Health Monitor also expressed concerns as to the implementation and effectiveness of behavioral interventions in his most recent report.

**Paragraph 2: Department-Wide Behavioral Management System** DJJ shall adopt and implement a comprehensive, department-wide, evidence-based or evidence-informed behavioral management system to provide a consistent model for youth behavior throughout the facilities.

**DJJ Status:** The Department has been working to revise its policies on Positive Behavior Interventions and Supports (PBIS) and youth discipline over the past year. The Department detailed changes to the proposed PBIS system and technical adjustments based on the Safety and Welfare Monitor's feedback in the Parties' Joint Status Report as to Issues Identified in 2017 Monitor Reports (Dkt. 228 at 25). On April 20, the Safety and Welfare Monitor provided the Department with additional recommendations, which have been reviewed and responded to or incorporated. The Y360 electronic records system developments continue, and the Department recently received a demonstration of the new system for youth disciplinary tickets.

The Department's Deputy Director of Programs and Chief of Professional Development and Training conducted train-the-trainer presentations for teams at each youth center, including the Assistant Superintendents of Programs, on the new PBIS and youth discipline policies. The Assistant Superintendents of Programs are spearheading training for all staff members on the new policies, which are underway and will be completed by early September. Additionally, the youth discipline committee members at each facility have been trained on the new policies. When the technical changes to Y360 are complete, the Department will publish the new policies and proceed with implementation.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon prior Monitor assessments and also based upon youth interviews. This provision requires Monitor assessment. Both the Safety and Welfare Monitor and the Mental Health Monitor expressed concerns as to this area in their most recent reports. In addition, youth interviews indicate that very significant issues persist with implementation of behavioral management (PBIS) at IYC St. Charles and IYC Harrisburg.

**Paragraph 3: Individualized Youth Development Plans** DJJ shall implement policies and procedures requiring preparation of a youth development plan (YDP) for each youth committed to DJJ custody.

**DJJ Status:** In the last report, the Monitor recommended improving the content of case plans and supporting YFS skill development with supervisory coaching and formal training. On

March 2, Orbis Partners, Inc. provided training to Youth and Family Specialist (YFS) Supervisors on case plan development and utilizing staff feedback forms. Additionally, as described in more detail in Part V ¶ 5, case plan development will be a topic for the YFS Supervisor/Specialist training program, expected to be launched in early 2019.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon prior Monitor assessments. This provision requires Monitor assessment. Both the Safety and Welfare Monitor and the Mental Health Monitor expressed concerns as to this area in their most recent reports.

**Paragraph 4: Security Staffing Levels** DJJ shall increase the number of security staff posts to ensure adequate staffing at each facility.

**DJJ Status:** DJJ is meeting youth to security staff ratios of 8:1 during waking hours and 16:1 during sleeping hours at each facility as of May 2018.[3]

| Security Staffing Ratios | First Shift (6am to 2pm) | Second Shift (2pm to 10pm) | Third Shift (10pm to 6am) |
|---|---|---|---|
| IYC Chicago | 4.4 | 4.5 | 7.6 |
| IYC Harrisburg | 3.5 | 3.8 | 8.2 |
| IYC Pere Marquette | 2.6 | 3.4 | 6.7 |
| IYC St. Charles | 3.3 | 4.3 | 7.9 |
| IYC Warrenville | 3 | 3 | 5.1 |
| **Total** | **3.4** | **3.9** | **7.4** |

The ratio for IYC-St. Charles appears sufficient, but the youth center needs more security staff, particularly on the 2:00pm-10:00pm shift, to ensure uninterrupted programming for youth. The facility administration struggles to ensure coverage of such a large physical plant. Security staff at the facility may be assigned to transport youth to and from court, to work in the control center, or to supervise youth in various locations at the facility such as the infirmary. The Department's Deputy Director of Operations is working with the facility's administration to ensure posts are assigned as efficiently as possible.

To better reflect the trend of the Department's security staff levels, the table below reflects each facility's security staff headcount on a monthly basis for the past year.

---

[3] Staffing ratios generally are calculated by taking the average number of security staff reporting for each shift for the month and dividing by the average daily population of youth for the month. In October 2017, the Federal government provided clarification on the Federal Prison Rape Elimination Act (PREA) staffing standards. Moving forward, the standard is set as the ratio of constant interactions between youth and staff that must be met. The Department is working to revise its security staffing posts and calculations to ensure compliance with the Federal government's updated guidance. However, this data reflects the historic calculation.

Security Staff Headcount by Facility

|  | 7/17 | 8/17 | 9/17 | 10/17 | 11/17 | 12/17 | 1/18 | 2/18 | 3/18 | 4/18 |
|---|---|---|---|---|---|---|---|---|---|---|
| *Chicago* | 78 | 77 | 73 | 79 | 78 | 77 | 74 | 84 | 83 | 81 |
| *Harrisburg* | 147 | 145 | 142 | 150 | 149 | 145 | 143 | 153 | 152 | 150 |
| *Pere Marquette* | 43 | 43 | 44 | 49 | 49 | 50 | 48 | 52 | 50 | 49 |
| *St. Charles* | 189 | 185 | 180 | 195 | 190 | 189 | 187 | 180 | 172 | 170 |
| *Warrenville* | 67 | 67 | 65 | 70 | 69 | 68 | 68 | 41 | 69 | 68 |
| **IDJJ Total** | **524** | **517** | **504** | **543** | **535** | **529** | **520** | **510** | **526** | **518** |

*May and June 2018 data has not been made available by fiscal at this time.

The Department is addressing the staff shortage through continued hiring efforts. A Juvenile Justice Specialist Intern Academy began on Monday, July 16 and includes 12 interns specifically for IYC-St. Charles. In addition, the Department's more frequent screenings in the Northern region have yielded additional individuals eligible for hire at IYC-St. Charles. Six new JJS staff are scheduled to begin the Academy on August 6, and 21 more eligible candidates are in the selection and hiring process. The Department anticipates onboarding the next class within six weeks. The Department continues to hire additional security staff as quickly as it can.

The Department's efforts to address the backlog of workman's compensation files at IYC-St. Charles were detailed in the Progress Report (Dkt. 237).

Finally, the Department is working to improve its retention of security staff at all facilities, including IYC-St. Charles. Every facility has created an Employee Wellness Committee responsible for surveying staff to identify needs and interests around healthier living, and coordinating activities and programs responsive to the staff needs and interests identified. Examples of the activities include the following:

- Organizing 15-minute breaks to walk the perimeter of the facility as a group;
- Identifying local community businesses and services, such as health clubs, providing discounts to DJJ staff members;
- Planning social outings and non-profit fundraising opportunities to build staff camaraderie;
- Coordinating healthy lunch options for staff at the facility;
- Recognizing staff for their positive contributions and rewarding them with free tickets to sporting events and Department-wide email recognition.

Every facility is also creating a Staff Crisis Response Team. Interested staff members applied and team members were selected at each facility. The team members attended initial training in February; Northern region team members received additional training in June, and Southern region members will be trained later this summer. The purpose of the team is to provide confidential peer-to-peer staff support to individuals who have experienced a traumatic event, at work or in his/her personal life. The first planned event is scheduled for July 21 at IYC-St. Charles.

**Plaintiffs' Response:** As to IYC St. Charles, Plaintiffs identified this as area of non-compliance based upon multiple sources of information. There has been long-standing non-compliance with the "adequate staffing" requirement at that site, with many collateral consequences.

**Paragraph 5: Youth and Family Specialist Staffing Levels**: DJJ shall achieve and maintain a staff-to-youth ratio for Youth and Family Specialists of an average of 20:1 as specified in the July 17, 2014 Supplemental Order.

**DJJ Status:** DJJ is meeting the 20:1 youth to Youth and Family Specialist (YFS) ratio at all facilities:

Youth to YFS Ratios

|  | Number of YFS | Ratio |
|---|---|---|
| *Chicago* | 4 | 17.3 to 1 |
| *Harrisburg* | 11 | 10.3 to 1 |
| *Pere Marquette* | 3 | 12 to 1 |
| *St. Charles* | 10 | 10.4 to 1 |
| *Warrenville* | 5 | 7.2 to 1 |
| **IDJJ Overall** | **33** | **10.8 to 1** |

To continue professional development of YFS, the Department intends to launch a Youth and Family Specialist and Supervisor training. The Department will develop a list of topics for training and require monthly meetings between YFS Supervisors and Clinical Services Supervisors at the facility, and bi-weekly meetings between YFS and YFS Supervisors. The meetings will focus on specific topics selected based on each staff member's areas of interest or need. The Deputy Director of Programs will begin developing the training this fall with implementation targeted for early 2019.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon prior Monitor assessments, since the Supplemental Order implementing this provision (Dkt. 84) also contains a requirement that the Safety and Welfare Monitor "assess whether the Youth and Family Specialists are engaging in frequent, meaningful interactions with youths and facilitating effective rehabilitative services based on youths' individual needs . . .," and leaves open the possibility that staffing ratios may need to be readjusted as a consequence of this review. Hence this provision requires Monitor assessment. The most recent Safety and Welfare Monitor assessment was partial compliance.

**Paragraph 7: Youth Grievance Reporting** DJJ shall ensure that all youth have adequate means to report allegations of abuse and/or submit grievances.

**DJJ Status:** The revised youth grievance policy took effect on October 1, 2017 and its implementation is well underway. All grievance officers and back-up grievances officers have been trained. The Deputy Director of Programs receives grievance logs from the facilities and monitors compliance periodically. In the month of April, the Deputy Director provided individual feedback to grievance officers conveying areas for improvement and corrections.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon past Monitor assessment, youth interviews, and the fact that the roll-out of a new grievance policy is a

work in progress.  This provision requires monitor assessment, *inter alia*.[4]  The most recent Safety and Welfare Monitor assessment was partial compliance.

**Paragraph 10: General Programming** DJJ shall create and implement a policy to provide opportunities, subject to reasonable security concerns, for all DJJ youth to spend at least eight hours per day outside of their rooms engaged in supervised activities.

**DJJ Status:**  As described in the Progress Report (Dkt. 237), the Department's Deputy Director of Programs is reviewing youth center program schedules and deviations from the schedule in order to track compliance.  Youth idle time has been identified by the Parties and Monitors as a priority area of focus.

At IYC-St. Charles specifically, the Department is working on an agreement with a "restorative justice hub" representing a collaboration of seven different social service agencies to provide prosocial programs and activities for youth.  An on-site meeting between the participating agencies and Deputy Director of Programs took place on June 6 and the Department received a cost proposal and a menu of services, programs, and activities for review from the "restorative justice hub" on July 24.

**Plaintiffs' Response:**  Plaintiffs identified this as an area of non-compliance based upon site visits and youth interviews as well as data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests.  Non-compliance with this provision is longstanding at IYC St. Charles.  In addition, this provision contains a requirement of "an appropriate mix of physical exercise, recreational activities, and work details"; based upon the information available to Plaintiffs, the requirements of this provision are also not met at IYC Chicago or IYC Harrisburg. (The problems at these facilities include but are not limited to lack of access to any form of outdoor activity for most youth at IYC Chicago, and insufficient programming/access by volunteers at IYC Harrisburg; the only volunteer activities appear to be religion-related).

## REMEDIAL PLAN PART VII:  IMPLEMENTATION AND MONITORING

**Paragraph 1:  Deputy Director of Quality Assurance**: DJJ shall appoint a Deputy Director of Quality Assurance to monitor the delivery of services and programs to youth, ensuring implementation of programs and operations are consistent with the agency's objectives and assisting with development and implementation of statewide policies, procedures, guidelines, and performance standards.

**DJJ Status:** The Department is working to build internal capacity to conduct more targeted audits for the purpose of improving its quality assurance.  Also, the Department is hiring a Chief Performance Officer to improve its data-informed decision-making and quality assurance program.  The Department has interviewed several candidates and a selection has been made.

---

[4]  Plaintiffs believe that whether youth find the new grievance procedure to be credible and functional will be important as well.

**Plaintiffs' Response:** Plaintiffs identified this as an area of non-compliance based upon prior Monitor assessments as well as data provided by the Department to Plaintiffs as part of Plaintiffs' standing data and information requests. This provision requires Monitor assessment; the most recent Safety and Welfare Monitor assessment was partial compliance. Plaintiffs have received audit reports as to some but not all of the Youth Centers which indicate that a fully-functioning QA process is still a work in progress.

DATED: July 25, 2018

Respectfully submitted,

**For the Plaintiffs:**

By: /s/ Camille Bennett

Benjamin S. Wolf
Camille Bennett
Lindsay S. Miller
Roger Baldwin Foundation of ACLU, Inc.
150 North Michigan Avenue, Suite 600
Chicago, IL 60601
(312) 201-9740

Maja C. Eaton
Kevin M. Fee, Jr.
Joseph R. Dosch
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

**For the Defendant:**

By: /s/ Michael T. Dierkes

Michael T. Dierkes
Office of the Illinois Attorney General
General Law Bureau
100 West Randolph Street, 13th Floor
Chicago, IL 60601
(312) 814-3672