**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| R.J., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 12-cv-7289 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| HEIDI MUELLER, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT STATUS REPORT REGARDING COMPLIANCE

Pursuant to the Court's order of August 13, 2019 (Dkt. 293), the parties respectfully submit this joint status report regarding compliance, which includes an executive summary below and a compliance chart attached hereto as Exhibit A.

1.      This action was filed on September 12, 2012 as a proposed class on behalf of all youth housed in the Illinois Department of Juvenile Justice ("DJJ" or the "Department") seeking reforms in the Department's mental health services, general and special education services, and policies as to confinement, safety, and commitment beyond release dates. Dkt. 1. On October 2, 2012, the Court preliminarily approved a Consent Decree and certified a class consisting of all youth who were and/or in the future would be confined by the Illinois Department of Juvenile Justice, and a sub-class consisting of all members of the plaintiff class who had or would have special education needs. Dkt. 18 ¶¶1-2.  The Decree received final approval and was entered on December 6, 2012. Dkt. 33. As a first step, the Decree required a panel of court-appointed experts to investigate DJJ and report their findings to the Court to be the basis of a Remedial Plan. Dkt.33 ¶¶ 6, 10-11. The reports were filed on September 23, 2013, and the Plan was approved by the Court on April 7, 2014. Dkt. 51, 73.

2.     The Remedial Plan required the development of numerous policies as foundations for future changes, as well as the negotiation and entry of two supplemental orders addressing staffing requirements for mental health professionals, certain educational staff, and Youth and Family Specialists. Dkt. 73, *passim*.  2014 and much of 2015 were largely taken up with the negotiation and submission of these policies and proposed orders to the Monitors and the Court. *See* Dkt. 80, 85, 87, 102, 115, 116, 123, 133, 135, 147, 151; Dkt. 84, 165. The Department also had to eliminate old programs that were determined by the Monitors to be impediments to reform. *See, e.g.,* Dkt. 154-1 p. 3. Consequently, 2016 was the first year in which progress towards compliance with the Decree and Plan could start to be assessed.

3.     The Consent Decree requires two full years of "substantial compliance" on any issue, on a facility basis, for termination of monitoring "regarding that issue at that facility."[1] Dkt. 227 ¶ 37.  As of the filing of the 2019 Monitor reports on October 31, 2019, of the 37 Remedial Plan requirements, 21 are now fully compliant, and 16 are non-compliant or in "partial compliance."  10 requirements have already been in compliance for two full years. *See* Exhibit 1.

4.     The chart attached as Exhibit 1 summarizes the history of DJJ's compliance with the requirements of the Remedial Plan, based on the findings in the Monitors' reports since 2016.  This year, the Mental Health Monitor wrote that "over the course of the next year, substantial compliance in all areas will be possible to attain."  Dkt. No. 294-2 at 2.  The Education Monitor indicated that "both Harrisburg and Pere Marquette are in substantial compliance with all provisions of the Remedial Plan," and recommended a final monitoring visit for those facilities in 2020.  Dkt. No. 294-3 at 4.  He found that the education program at Warrenville also "meets the provisions of the Remedial Plan" (a "relatively recent

---

[1] Monitoring can be extended "for good cause."  *Id*.

development"), and that St. Charles continues to improve and was able to maintain a full-time school schedule for most days during the reporting period, although it still faces some challenges. *Id.* at 4, 6-7. Finally, the Safety and Welfare Monitor noted progress at all facilities resulting in a large number of provisions moving into substantial compliance. Dkt. No. 294-1 at 3. She stated that four out of the five facilities "need only to address a few isolated areas and then maintain current performance levels in order to reach the two-year threshold for termination." *Id.* at 5. She noted that although St. Charles has "more extensive work to do in several key areas of the Remedial Plan," conditions at that facility "significantly improved" during the last monitoring period, and she provided specific recommendations for achieving compliance. *Id.* at 5, 46.

DATED:  November 14, 2019                          Respectfully submitted,

**For the Plaintiffs:**                                  **For the Defendant:**

By: /s/ Camille E. Bennett _____                By: /s/ Michael T. Dierkes _____

Benjamin S. Wolf                                  Michael T. Dierkes
Camille E. Bennett                                Office of the Illinois Attorney General
Allyson M. Bain                                   General Law Bureau
Roger Baldwin Foundation of ACLU, Inc.            100 West Randolph Street, 13th Floor
150 North Michigan Avenue, Suite 600              Chicago, IL 60601
Chicago, IL 60601                                 (312) 814-3672
(312) 201-9740

Maja C. Eaton
Kevin M. Fee, Jr.
Joseph R. Dosch
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000