IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| R.J., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-7289 |
| | ) | |
| HEIDI MUELLER, Director of the | ) | Hon. Matthew F. Kennelly |
| Illinois Department of Juvenile Justice, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF ALEXIS PICARD IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE COMPENSATORY EDUCATION PLAN**

I, Alexis Picard, hereby state:

1. I am a Legal Fellow at the Roger Baldwin Foundation of the ACLU, Inc. I have been assisting with the above-captioned matter since September of last year.

2. As part of the parties' agreed-upon efforts to increase participation in the compensatory education program, I was scheduled to provide in-person notification and explanation of the program in a group setting to all eligible incarcerated youth on Thursday, July 20, 2023 at both IYC Warrenville and IYC St. Charles. We had arranged to provide the notice at an in-person "assembly"-style meeting while the education monitor, Dr. Mark Zablocki, appeared virtually to answer questions.

3. Although IDJJ's Chief Legal Counsel scheduled this notification on my behalf, and it was confirmed multiple times (including the morning of the visit), neither facility was prepared to host the in-person notification meeting. Neither was prepared to set up a Zoom link to host Dr. Zablocki virtually, either. Upon my arrival at IYC Warrenville it became clear that the staff (including Warrenville's Superintendent) did not understand the purpose of the visit and had not prepared any of the agreed accommodations. During a call with IDJJ's counsel I learned that we could not expect any better at IYC St. Charles. We were forced to reschedule the notification meeting for the following week.

4. While at IYC Warrenville I did have an opportunity to speak with Ms. Cox from the facility's school, whom the Superintendent identified as the staff member most knowledgeable about the compensatory education program. Ms. Cox was unable to answer any of my questions about the notification scheme for the program, and seemed unfamiliar with the specifics of the program.

5. For example, Ms. Cox said she did not know whether *any* of the youth currently at the facility were eligible for the compensatory education program (when in fact all of them are, as the facility has still not been declared in compliance). She could not answer any of my questions about how they were notified of the program, and was apparently unaware of our effort to notify the youth that day, or the effort to increase participation in the program.

6. Ms. Cox stated that she understood only one youth had participated in the compensatory education program, and that youth had since been released, and that no youth were currently participating in the program.

7. Ms. Cox informed us that, contrary to Dr. Zablocki's compensatory education plan, the facility's regular teachers had provided the modest compensatory education tutoring services she was aware of. (This is consistent with the findings in Dr. Zablocki's recent IYC Warrenville report, Dkt. 410-1.) She was not aware of any tutors—from LVI or otherwise—providing compensatory education services.

8. Ms. Cox also stated that she was unaware that the program's formal eligibility start date was June 2021.

9. Pursuant to 28 U.S.C. § 1746, I declare that the foregoing is true and correct.

Dated: July 23, 2023                                      /s/ Alexis Picard
                                                                                                   Alexis Picard