# EXHIBIT 1

_R.J. v Mueller_   Case No. 12-cv-07289

The Status of Education Services and Supports for Students in the
Illinois Department of Juvenile Justice, 2023

Mark Zablocki, Ph.D.
December 6, 2023

Mark Zablocki, Ph.D.
1110 Summit St.
Bloomington, IL 61701
(301) 233-6590

1

Table of Contents

I.      Introduction                                              3

II.     Methodology                                               6

III.    Compliance Status on Key Indicators                       7

        Full Time, Full Day Instruction                           7

        Teacher Staffing Levels                                  10

        Other Education Staffing Levels                          12

        Substitute Teacher Policy                                 4

        Modified School Calendar                                 14

        Blended Instruction                                      15

        Curriculum                                               16

        Special Education Policies and Procedures                19

        Compensatory Education                                   21

IV.     Conclusion                                               24

**Introduction**

This report is the 11th in a series on the compliance status of education services at the

Illinois Department of Juvenile Justice (IDJJ) Youth Centers ("IYCs"), and Dr. Mark Zablocki's

second report as Court Monitor for education at IDJJ-IYC. It should be noted that in the 9th report

(2021), the previous monitor had found that IYC-Pere Marquette, and IYC-Harrisburg were in

substantial compliance with the Remedial Plan for two consecutive years, thus ending monitoring

at those two facilities. The 10th report, issued in October 2021 evaluated education compliance at

the three remaining facilities, IYC-Chicago, IYC- St. Charles, and IYC- Warrenville, that were still

striving to meet compliance under the provisions of the Remedial Plan.

*Table 1: Status of Compliance at each IYC in 10th Report (October 2022)*

|  | CHI | STC | WRV |
|---|---|---|---|
| 1. Full-time, Full-Day Instruction | PC | PC | PC |
| 2. Teacher Staffing Levels | C | PC | PC |
| 3. Other Education Staffing Levels | C | PC | PC |
| 4. Substitute Teacher Policy | C | C | C |
| 5. Modified School Calendar | C | C | C |
| 6. Blended Learning | C | C | C |
| 7. Curriculum | PC | PC | PC |
| 8. Special Education Policies and Procedures | C | C | C |

*C= Substantial compliance*
*PC- Partial Compliance*

As shown in Table 1, substantial compliance was noted on four different measures for all

three facilities, and for two measures at IYC-CHI. Partial compliance was noted for the remaining

measures. Full-time, Full-Day Instruction was the one area that all three facilities had yet to achieve

full compliance. This mainly had to do with educational and security staffing levels which have

been a pervasive problem throughout the monitoring period, and unfortunately, continue to impact

the ability to offer full-day instruction, and effectively implement blended learning. The inability to

offer full-day instruction led to the creation of the compensatory education plan in September 2022.

The compensatory education plan has been implemented and after a slow start, has started to gain traction for youth within the facilities. At the same time, implementing the policy has put an enormous strain on administrative staff. It illustrates the underlying challenges IDJJ faces to adequately provide Career and Technical Education (CTE) and challenges related to school staffing shortages.

*Areas of Growth*

There have been areas where IDJJ is approaching or is in substantial compliance in some areas. Curriculum development in both subject matter content and CTE has been robust. The creation of daily lesson plans for teachers to implement blended learning and the CTE curriculum that was approved by the Illinois State Board of Education (ISBE) has served to frame instruction in a structured way that is beneficial to youth. Additionally, IDJJ has offered several professional development workshops designed to train teachers to implement blended learning in their classrooms, and to incorporate state educational standards in their lesson planning. This is a positive step in the right direction. Teachers have mentioned that these are helpful, and they are excited to be able to engage in direct instruction.

*The Pervasive Issue of Staffing Shortages*

School and security staffing shortages remain and have been a pervasive issue throughout the monitoring period. Samuel Sublett High School (STC) has not had a principal since July, and the principal at Maya Angelou (WRV) recently departed. Administrators from IDJJ have filled these positions on a rotating basis, but it is not clear how often this occurs. IDJJ has not advertised hiring a principal at STC due to the impending restructuring, and a teacher from IYC-CHI is currently serving as interim principal at IYC-WRV while IDJJ actively searches for a candidate.

Teacher shortages have overall been mitigated by a reduced population of youth which has resulted in teacher: student ratios remaining within limits set by the Remedial Plan (10:1 for

general education, 6:1 for special education) with a couple of exceptions. At STC the ratio of special education students to teachers was 14:1 at the time of my visit in October. This far exceeds the 6:1 ratio described in the remedial plan. At WRV, one content area teacher departed leaving only one general education teacher and two special educators. Thus, the ratio for the general educators was 20:1, which exceeds the 10:1 ratio. It should be noted that the ratios reflect a simple count of students to teachers and do not reflect a ratio at any given time. For example, at WRV, a teacher would not have 20 students in a class at a time but may teach them in groups of five or fewer at different points throughout the day. Since the youth population remains low at all three facilities, teacher-to-student ratios are reasonable despite the overall numbers. Additionally, vacancies at WRV should be filled once the teachers from STC transfer. That said, monitoring should continue during and after the transition to ensure that ratios are being met, and that staffing at the newly restructured school at IYC-STC is meeting the vocational education needs of youth.

*IDJJ Policies vs. Practical Applications*

This report will also highlight the disconnect that exists between policy and practice. IDJJ has made excellent strides in developing policies addressing different aspects of the Remedial Plan. However, these do not always result in effective practices that benefit the education of the youth that they serve. For example, IDDJ developed an informal substitute teacher policy but has not hired any substitute teachers to execute this policy at Warrenville and St. Charles. IYC-CHI has one teacher who serves as a "floater" and can substitute when needed, which helps with filling vacancies, but does not address a situation where two or more teachers are absent and only one position can be filled.  IDJJ has also developed policies to enhance and increase blended learning. However, because of staff shortages, teacher absences, and frequent schedule changes, blended learning is unevenly practiced across the three facilities. The disruptions are especially pronounced at WRV and STC where frequent disruptions to the school day have made the application of

blended learning extremely difficult to execute. Each compliance indicator is described below and where necessary, will include a discussion of the nuanced interpretations of compliance as it relates to the disconnect between policy and practice. The report will also include an update on the compensatory education plan instituted in September 2022.

**Methodology**

*Site Visits/Interviews*

The methodology used for this report included site visits, interviews, and document review. Site visits took place at the Maya Angelou School at IYC-WRV on 5/17/23, 6/21/23, and 10/16/23, at the Samuel Sublett School at IYC-STC on 6/21/23 and 10/16/23, and at the Maya Angelou School at IYC-CHI on 6/14/23. For four of the site visits, both Dr. Zablocki and Colleen Finucane attended, while Dr. Zablocki independently attended one. At all three facilities interviews were conducted with 12 teachers or administrators, and 16 incarcerated students. Four additional staff interviews were conducted remotely. Additionally, both myself and Colleen Finucane remotely attended compensatory education presentations on 7/26/23.

*Document review*

The documents used included IDJJ policies on staffing, compensatory education, intake assessment, school scheduling, blended learning, and special education. Additional documents included curriculum guides, CTE programming, professional development agendas and materials, facility directories, daily school schedules, lesson plans, and status reports filed with the Court throughout the past year.

**Compliance Indicators**

Overall, IDJJ has improved compliance on key indicators but is still striving to meet compliance on two important measures at IYC-STC, and IYC-WRV. Table 2 shows the updated compliance status for all three facilities on the eight indicators in the Remedial Plan. IYC-CHI has

6

come into substantial compliance on all eight indicators and has achieved substantial compliance for two consecutive years for six of the eight indicators (#2, 3, 4, 5, 6, 8). IYC-STC and IYC-WRV have come into compliance on Curriculum (#7) but are in partial compliance on Full-time, Full-day Instruction (#1) and Substitute Teacher Policy (#4). IYC-WRV remains in partial compliance on Teacher Staffing Level (#2).

*Table 2: Compliance indicators for IYC-CHI, IYC-STC, IYC-WRV*

|  | CHI | STC | WRV |
|---|---|---|---|
| 1. Full-time, Full-Day Instruction | C | PC | PC |
| 2. Teacher Staffing Levels | C | C | PC |
| 3. Other Education Staffing Levels | C | C | C |
| 4. Substitute Teacher Policy | C | PC | PC |
| 5. Modified School Calendar | C | C | C |
| 6. Blended Learning | C | C | C |
| 7. Curriculum | C | C | C |
| 8. Special Education Policies and Procedures | C | C | C |

### IV.I Full-time, Full-Day Instruction

*DJJ shall provide full-time, full day instruction on all scheduled school days in each facility. Specifically, DJJ shall make available at least five hours of instruction per day, on all scheduled school days, to all youths committed to the DJJ, regardless of their status or security classification, except that: (a) DJJ shall offer at least two and one-half hours of educational programming per scheduled school day to youths who have a high school diploma or GED; and (b) within 120 days of the entry of this plan, and in consultation with the court-appointed education expert and plaintiffs' counsel, DJJ shall develop and implement a policy regarding the kind and minimum amount of alternative educational programming for youth in reception and classification units. During scheduled non-school days, DJJ shall offer alternative educational programming and online coursework.*

### Methodology

Site visits to IYC-WRV and IYC-STC on 6/21/23, and 10/16/23; IYC-CHI on 6/14/23
Interviews with 12 faculty/staff, and 15 youth
SD 428 School Calendar
IDJJ Documentation of School Cancellations
IDJJ SD #428 Administrative Directive: School Absences and Disruptions
Staffing status reports (1:12cv-07289 #370),
IDJJ Curriculum Update (1/27/23)

**Status: Compliance at IYC-CHI, Partial compliance at IYC-WRV and IYC-STC**

The Remedial Plan dictates that IDJJ shall make available 5 hours of school for eligible youth, and 2.5 hours of educational programming to youth with a HS diploma or GED. While the SD #428 school schedule reflects this, educational and secure staffing shortages and absences have hampered their ability to do this. According to the IDJJ, school is only canceled for serious security issues or teacher shortages. They have reported that over the past year, schools at IYC- WRV and IYC-STC were closed for either of these reasons two times and five times respectively.[1] IYC-CHI did not report a school closure. Interviews with staff and students at IYC-CHI revealed that school cancellations there were rare, and that full-time instruction regularly occurred.

By contrast, youth and staff at IYC-WRV revealed that school and/or class cancellations were not isolated events but happened with regularity. On the October date when we visited, youth were only attending one or two classes because of teacher absences. One youth mentioned that they could not attain high school credits through Connexus because they were in school so infrequently, and there was no access to Connexus on the living units. At IYC-STC, most of the school cancellations were due to security concerns and the lack of Youth Care workers to safely transport students to and from school. On the date of our site visit to IYC-STC in October, there was one living unit whose youth did not attend class in the morning due to a security concern and another unit whose youth did not attend class in the afternoon due to a planned teacher absence. IDJJ has said that they are struggling to fill secure staff positions. While secure staffing is outside of the Education Monitor's purview, Youth Care staffing shortages are having a negative impact on the ability of the schools to provide full-day instruction.

School cancellations only tell part of the story and interviews suggested that full-day

---

[1] According to a IDJJ school cancellation documents (DJJ 0364)

instruction was not regularly happening. One staff member at IYC-STC said youth are in school "probably 30% of the time," in response to a question on full-day instruction. Representatives for the Plaintiffs who visited the facilities at different times heard similar stories. The attendance data provided by IDJJ paints a different picture showing that student absences are somewhat rare. However, this is misleading as IDJJ counts a full day of attendance as a youth showing up for one period of class per day and does not accurately depict attendance for a full 5-hour school day. This also seems to contradict IDJJ SD #428 policy which reads,

> *"If a youth is not present in school, the teacher of that hour will indicate if the youth's absence is excused or unexcused. A specific narrative notation is also made by the teacher to identify the reason for the absence. A minimum of 3x per week, the building administrator reviews the attendance information in Y360 for reconciliation and accuracy. On a weekly basis, four of the five school administrators and office coordinators meet with SD #428 Central Office Administration and the Chief of Performance and Innovations to review the accuracy of the data and determine future needs." IDJJ SD #428 Curriculum Update (1/27/23)*

The attendance numbers provided to the Court Monitor and Compensatory Education Expert do not reflect the information described in the policy as described above.[2] For IDJJ to get a complete picture of attendance patterns at these two facilities, the policy described above should be practiced with fidelity. Compounding the issue is the lack of leadership at both schools. Having a school principal can add stability and can serve to facilitate between secure staff and school staff to schedule classes in a way that would enable IDJJ to provide full-day instruction. Having teachers involved in scheduling is important because they best know the educational needs of their students and need consistency and predictability in order to adequately plan instruction.

Recommendations:

1. Hire the requisite number of educators to alleviate the burden placed on youth when a

---

2 Because IDJJ's attendance data has been proven to be unreliable on school cancellation frequency, the compensatory education formula for Warrenville will have to be adjusted to allow all recently incarcerated youth to receive compensatory education services.

teacher(s) is absent.

2. Allow educational staff to schedule classes.

3. Maintain the same schedule to the extent possible to ensure consistency.

4. Develop clear attendance guidelines and reporting procedures.

### IV.2. Teacher Staffing Levels

*Within one year of entry of this remedial plan, DJJ shall create and fill additional teacher positions to ensure that full-time, full day instruction is provided on all scheduled school days in each facility, and that all special education services required by youths' IEPs are provided. DJJ shall ensure student to teacher ratios of 10:1 or lower for a general classroom setting and 6:1 or lower for students with intensive needs; however, with approval of the court-appointed education expert higher ratios may be utilized where para-professionals such as teachers' assistants are available. DJJ shall also work to streamline the teacher hiring process to eliminate any barriers to timely hiring of teachers and duplicative efforts or other inefficiencies in the hiring process.*

### Methodology

Site visits to IYC-WRV and IYC-STC on 6/21/23, and 10/16/23; IYC-CHI on 6/14/23 Interviews with 12 faculty/staff, and 15 youth
Staffing status reports (1:12cv-07289 #396, 398, 401, 407, 408, 410, 426) IDJJ School District #428 Administration, Educator, and Facility Directory

**Status: Compliance at IYC-CHI and IYC-STC; Partial Compliance at IYC-WRV**

Inadequate educational staffing levels have been endemic at the IDJJ schools and were highlighted in several previous Court Monitor reports. Historically, long delays in the hiring process and inequities in salaries compared to surrounding school districts (IYC-STC, IYC-WRV) have served as a deterrent to hiring educators. While the hiring process has gotten marginally better, the same barriers continue to prevent IDJJ from hiring adequate educational staff. The impending restructuring at IYC-STC, which will initiate a transfer of teachers to the other two facilities, may help to offset these deficiencies, although the restructuring only involves moving youth and teachers from one location to another – it does not involve a change to the overall headcount.

Student-to-teacher ratios have fluctuated throughout the year but have mostly been within

the limits described in the Remedial Plan with some exceptions. In October, IYC-STC had an 8:1 student-to-teacher ratio for general education students, but a 14:1 ratio for special education students. This was primarily due to one of the special educators departing in early fall. The current special educator said that the totals are high, but manageable because of the push-in model being used. IYC-WRV only has one content area teacher and two special educators. A total of 32 students were eligible for school resulting in a 20:1 ratio for general education teachers and 6:1 for special education. The only content area teacher is certified in Math, Science, and Social Science. The Language Arts teacher recently left the school creating a vacancy for that position. There is one library associate at IYC-WRV, but no CTE teacher. IYC-CHI has the most robust teaching staff and a lower number of students than the other two facilities resulting in low ratios. IDJJ will have the CTE position at IYC-CHI staffed after the upcoming restructuring. A P.E. (Physical Education) instructor was recently hired to split time between IYC-CHI and IYC- WRV.

*Table 3: Current Teacher Staffing Ratios (10/2023)*

| Teachers | IYC-CHI | S:T ratio | IYC-STC | S:T ratio | IYC-WRV | S:T ratio |
|---|---|---|---|---|---|---|
| General Educators | 6 | 3:1 | 4 | 8:1 | 1 | 20:1 |
| Special Educators | 2 | 5:1 | 1 | 14:1 | 2 | 6:1 |
| Other Educators (Library, P.E., CTE) | 1 | ■ | 1 | ■ | 1 | ■ |

As mentioned earlier in this report, the student-teacher ratios reflect the number of students relative to the number of certified general or special educators. While a 20:1 ratio is high, the teacher will not have 20 students in any one classroom as class sizes tend to be limited to six or fewer.

Teacher staffing levels may be alleviated once students and teachers are transferred to other facilities to accommodate IYC-STC becoming a Career and Technical Education Academy. In early October, IDJJ and AFSCME Council 31 signed a Memorandum of Understanding (MOU) which included a voluntary transfer of three teachers to IYC-WRV (one special educator and two general educators), two educators to IYC-CHI (general educator and CTE teacher), and one psychologist. As noted above, however, the restructuring only involves rearranging the location of youth and teachers – it does not involve a change to the overall headcount, and so will not necessarily remedy teacher shortages. Due to the uncertainty of the new staffing status at IYC-STC, the upcoming reorganization, and because graduate education is mandated by the Remedial Plan, Court monitoring should continue to ensure that staffing requirements are met and maintained over the upcoming year.

Recommendations:

1) Offer teachers in the northern facilities competitive salaries and benefits commensurate with surrounding school districts.

2) Streamline the hiring process to reduce the lengthy delays in the process.

3) Advocate for increased educational funding at the state level.

4) Partner with local universities such as UIC who have teacher training programs that focus on education in detention facilities.

5) Continue to fill all previously identified teacher vacancies.

### IV.3. Other Education Staffing Levels

*Within 90 days of the entry of this plan, and in consultation with the court-appointed education expert and plaintiffs' counsel, DJJ shall establish (a) appropriate staffing levels for school librarians, school counselors, and school clerical staff, and (b) an appropriate number of special education instructional specialists to assist special education teachers. The responsibilities of the school counselors shall include timely obtaining youths' prior school records, assessing credits needed for graduation, and monitoring implementation and compliance with youths' Individualized Education Plans. These staffing levels shall be adopted in a supplemental order, including deadlines for implementation, subject to the Court's review and approval, and also subject to the*

*PLRA findings as set forth above in paragraph I (2).*
*Methodology*
Interviews with faculty/staff and IDJJ District #428 School Administrators Staffing status reports
(1:12cv-07289 #407, 408, 410, 426)

**Status: Compliance at IYC-CHI, WRV, STC**

All three facilities are in compliance with Other Education Staffing levels but should continue

to be monitored during and after the restructuring.  The lack of Principal leadership at both IYC-

CHI and IYC-STC is concerning for reasons stated earlier in this report.  There is an adequate

number of office staff to handle educational records and an adequate number of school counselors

and school librarians. One notable exception is IYC-STC which still has vacancies for a librarian

and school counselor. This may be rectified with the restructuring, but IYC-STC was not compliant

at the time of our visit. IYC-WRV does not yet have a CTE teacher and is waiting for personnel to

staff the barber/cosmetology school. Vacancies remain for special education paraprofessionals

(para-pros) at all sites. Currently, IDJJ contracts with an outside agency to help find and hire para-

pros. This can help speed up the process, as potential employees are not subject to the same lengthy

hiring procedures as teachers. However, IDJJ is at a severe competitive disadvantage compared to

surrounding school districts which can offer more generous salaries and benefits resulting in no

hires.  The lack of paraprofessionals is somewhat offset by the low student-to-teacher ratios

currently found in special education. However, that is subject to change if there is a population

increase.

While full compliance is noted here, IDJJ could face further compliance problems pending

large population increases in special education, or a delay in the IYC-STC restructuring which will

necessitate filling vacant positions.

### *VI.4. Substitute Teacher Policy*

*DJJ shall, within 180 days of entry of this remedial plan, create and implement a plan to provide for certified substitute teachers in its facilities to minimize the impact of teacher absences on instruction in its schools.*

#### *Methodology*
Interviews with District #428 educational staff and administrators
IDJJ School District #428 Administration, Educator, and Facility Directory Staffing status reports (1:12cv-07289 #396, 398, 401, 407, 408, 410, 426) Educator subject area expertise and endorsements document
Substitute Teacher Policy at each facility (Item 4)

**Status: Compliance at IYC-CHI, Partial Compliance at IYC-WRV and IYC-STC**

This is one area where the disconnect between policy and practice is glaring. IDJJ has an informal written policy stating that there are five positions for permanent substitute teachers. However, only IYC-CHI maintains a regular substitute teacher. IYC-WRV and IYC-STC do not have available substitute teachers, which puts a burden on other educational staff in the event of a teacher's absence. One of the related service providers at IYC-WRV has a substitute teaching certificate but does not serve in that capacity.

Recommendations:

1) Request that the related service provider at IYC-WRV serve as a substitute teacher as necessary if it does not interfere with their normal duties.

2) Encourage Youth Care staff to attain substitute teaching certificates and provide basic training in curriculum knowledge and instructional strategies.

### *IV.5. Modified School Calendar*

*DJJ shall reduce teacher absences and ensure continuity of instruction by implementing a modified school calendar. The modified school calendar shall have defined vacation times for teachers and minimize the use of vacation time by teachers during school instruction periods. DJJ shall, within 60 days of entry of this remedial plan, prepare a draft school calendar for 2014-15 that specifies school holidays and other vacation time, staff development days, and a summer break for teachers while providing alternative educational programming for youths. Following review and input from the education expert and plaintiffs' counsel, DJJ shall, within 90 days of entry of this remedial plan, publish its final school calendar for 2014-15.*

14

*Methodology*
SD 428 School Calendar
Site visits

**Status: Compliance at IYC-CHI, IYC-WRV, IYC-STC**

IDJJ is in substantial compliance with a modified school calendar, although it is not always

followed (as explained elsewhere in this report). The calendar includes 179 student attendance days

including 32 summer school attendance days, 12 ISBE/IDJJ holidays, and teacher institute and

professional development days. This is the second consecutive year that IDJJ has been in

substantial compliance.

## *IV.6. Blended Instruction*

*DJJ shall ensure that it provides both traditional classroom instruction and web-based
instruction, individually tailored to students' needs.*

*Methodology*
Site visits to IYC-WRV and IYC-STC on 6/21/23, and 10/16/23; IYC-CHI on 6/14/23
Interviews with 12 faculty/staff, and 15 youth
School District #428 Lesson Plans
IDJJ SD #428 Central Office Administrative Memo: Blended Learning Model

**Status: Compliance at IYC-CHI, IYC-STC, IYC-WRV**

IDJJ is in compliance with the blended learning provision in all three facilities. Lesson

plans that are aligned with Illinois State Standards have been developed and teachers are

encouraged to use these for direct instruction days. Each facility has increased the amount of time

from one day per week to 1.5 days per week that is dedicated to direct instruction with a plan to

increase that to two days per week. A recent policy change to allow youth to attain credit for these

lessons has lessened the initial resistance that youth were exhibiting when the change

had taken place.[3] IDJJ administration has provided robust professional development opportunities

---

[3] According to SD #428 Curriculum Update (1/27/23)

15

for teachers to improve their skills.

Students and teachers have reported mixed opinions on the direct instruction component with some students saying it was "okay" and a few others who said the instruction "was not connected to anything." Teachers reported that their ability to provide blended learning has improved, but planning for direct instruction continues to be impacted by frequent schedule changes (WRV, STC) that make planning lessons difficult at best. This challenge is a direct result of issues described in the section on Full-day, Full-time instruction. Overall, there has been an improvement in the delivery of blended learning, and should only improve with continued professional development, incentivizing students with HS credit, and consistent scheduling that allows teachers to be able to effectively plan lessons.

### IV.7. *Curriculum*
*DJJ shall provide an academic curriculum sufficient to make available, to every youth without a high school diploma or GED, instruction in: (a) all subjects in which they must earn credit under state law in order to earn a high school diploma; (b) all subjects they need in order to prepare to take the GED exam; and (c) career and technical education programs for which high school credit can be earned. DJJ shall also offer vocational programming in which youths who already have a high school diploma or GED, or who are not on a diploma track, can earn vocational certification. Within one year of entry of this remedial plan, DJJ shall offer at least two vocational programs at each facility (except that facilities with fewer than 50 youths need only have one), and the DJJ shall ensure that at least one vocational program at each facility leads to certification. DJJ shall provide intensive literacy instruction to all youths who score below the 25th percentile on standardized reading tests upon DJJ admission.*

### *Methodology*

Site visits to IYC-WRV and IYC-STC on 6/21/23, and 10/16/23; IYC-CHI on 6/14/23
Interviews with 12 faculty/staff, and 15 youth
IDJJ Curriculum Update (1/27/23)
IDJJ Administrative Directive #4.10.115 (Programs and Services)
IDJJ SD #428 Transcript Guidelines (9/16/21)
IDJJ SD #428 Lesson Plan Format
Language Live Reading Program Update
After School Programs Memo
CTE Program Descriptions
Illinois Mandated Units of Study document
IDJJ Administrative Directive 4.10.114 (HS credits, graduate, and certificate requirements)

## Status: Compliance at IYC-CHI, IYC-STC, IYC-WRV

IDJJ has achieved substantial compliance at all three facilities in the design of their Curriculum, even if it is not always offered due to cancellations and understaffing. Specifically, IDJJ has developed policies for procedures associated with differentiated instruction in educational programming and has maintained a Curriculum Council since 2017. SD #428 has four Professional Learning Communities (PLCs) that reflect the main content disciplines and include teachers from all facilities. All three facilities provide a credit recovery model utilizing the Pearson Connexus program and have developed lesson plans and procedures for direct instruction in subject areas that are aligned with the ISBE standards for middle school and high school. There have been efforts to align these curricula within the blended learning model which is still a work in progress but should improve over time.

Students with intensive support needs in literacy are receiving instruction from special education teachers through the Language Live program at all three facilities. Not all students who qualify agree to receive instruction though due to some content they find objectionable. However, assessments are completed for all students and those who qualify are offered instructional services.

IDJJ also has a policy to provide educational packets to youth who are absent from school. These packets are delivered to youth in the living unit to be completed and returned the next day for a designated number of Carnegie units. The sample packets that I reviewed were mainly worksheets across different subject areas. It was difficult to determine whether these were connected to the main curriculum. Many faculty and youth said packets are rarely completed and returned.

During the past year the CTE curriculum developed by the CTE director was approved by ISBE and some form of CTE is available at all three facilities, though CTE is often not delivered at

some facilities, such as Warrenville, due to understaffing and frequent programming cancellations. The CTE curricular options and programming are robust and include curricula that can be taught by a dedicated CTE teacher (SchoolLinks, Career Exploration, Financial Literacy), and programming through partnerships with outside agencies (TMA, NOVA, Larry's Barber College, SimLog, Greater West Town Project, and D&D Solar) and local colleges (Elgin Community, & Northwestern). Lakeland College continues to operate at IYC-STC and features programming in the construction trades and custodial maintenance.

Larry's Barber College has been set up at all three facilities but has been plagued by a lack of staffing which has resulted in limited opportunities for youth. The Greater West Town project, which provides training in shipping and receiving, recently graduated several students from IYC-CHI. Overall, while the programming IDJJ has planned seems robust, actual youth participation has been minimal for various reasons, but may become better utilized once IYC-STC completes the transition to a Career school and staffing issues are resolved. It should be noted that while CTE curriculum is, many are not receiving the required 2.5 hours per day due to staffing shortages.

*Figure 1: Youth Enrolled in CTE Programming*



General Educational Development Test (GED) programming is an essential element and provides opportunities for youth aged 17 years old to adults who have not completed their formal high school education. The IDJJ programming goals include having a GED program and a dedicated proctor at every facility. Unfortunately, GED programming is largely unavailable, and youth are not afforded much opportunity to complete GED testing at the three northern facilities. Recommendations:

IDJJ has made excellent strides in curriculum design and while compliance has been met, monitoring should continue to ensure adequate programming and two full years of compliance.

1) GED programming should be offered at all three facilities.

2) Staffing issues at Larry's Barber College should be prioritized and addressed.

3) IDJJ should work to ensure they are meeting the Remedial Plan's requirement that graduate students receive a minimum of 2.5 hours of educational programming per day, which does not appear to be happening at Warrenville at a minimum.

### IV.8. Special Education Policies and Practices

*DJJ shall, within 180 days of entry of this remedial plan, revise and update its policies and procedures relating to special education. The policies and procedures shall provide for (a) timely obtaining youths' IEPs and related materials from their prior schools, (b) identification and assessment of youths with learning disabilities, (c) development and implementation of IEPs, and (d) monitoring to ensure that youths are receiving the services specified in their IEPs.*

### Methodology

Site visits
Interviews with special education administration and special education teachers
Individualized Education Plan (IEP), Functional Behavioral Assessments (FBAs), and
Behavioral Intervention Plans (BIP) documents.

### Status: Compliance at IYC-CHI, IYC-STC, IYC-WRV

Special Education policies and procedures remain compliant with the remedial plan and with federal and state statutes regarding special education. This is the second year of substantial

compliance. Individualized Education Plans (IEPs) are obtained efficiently and updated if necessary. Youth are assessed by the school psychologists as part of the intake process using standardized instruments. The special education administrative staff at IDJJ frequently revise IEPs from other school districts and conduct annual reviews and three-year evaluations in a timely manner. Education services are monitored as appropriate to ensure that students are receiving their required allotment of time as noted on their IEPs. IDJJ recently hired a new special education director for SD #428 to oversee the provision of special education services at all five facilities. A successful program has been the Special Education Liaison Program. During the 20/21 school year, IDJJ SD #428 Department of Special Education entered into an agreement with ISBE to develop a Special Education Liaison Program for youth with special needs who were returning to their home resident school districts. ISBE provided $995,000.00 in startup dollars to fund the program for three years.  With the conclusion of the 22/23 school year, the Liaison program will continue within the district. Anecdotal reports have been overwhelmingly positive, with families and youth benefiting from the extra support as they re-enter their home schools.

**Compensatory Education**

In September 2022, the Court approved and ordered IDJJ to implement the Compensatory Education Plan developed by the Court Monitor with input from both parties. This plan was suggested by the previous Court Monitor due to IDJJ's inability to provide full- day instruction. The first recorded tutoring session took place in March 2023 approximately six months after the Court approved the plan.  The implementation and success of the program have been impacted by disagreements on tutor services, scheduling problems, bureaucratic barriers, and difficulty in getting youth to available tutoring sessions. An overriding concern of the Court Monitor has been the ability of IDJJ to effectively deliver these services when they were struggling to deliver basic educational services due to the very issues that necessitated a compensatory education plan

(staffing issues, canceled school days, etc.). Added to this concern is the inconsistency of the current schedule of services and frequent interruptions which make student learning less than optimal.

The numbers in Table 4 show that approximately 10% of youth received tutoring services for an average of 3.9 hours (Range = 0.5-14 hours). The discrepancy between the number of hours awarded reflects the change in the formula that took effect on 11/1/22 and used a more conservative estimate with the good faith assumption that IDJJ was implementing full- time instruction. Regardless of the formula used, the average number of hours does not come close to either number. Bureaucratic barriers are evident in the average amount of time between when a student opted in for services and when youth began receiving tutoring. This is nearly a two-month delay which was attributed to both delays in IDJJ sending referral packets to Varsity (one of the two tutoring solutions IDJJ is currently offering to youth), and the amount of time Varsity was able to schedule sessions. Adding to the delay was the onus on Varsity to contact the youth or the youth's family to schedule sessions. Varsity also had scheduled sessions where a youth would not attend, and IDJJ was billed (appropriately) for services. IDJJ has also expressed concerns about the inability of online tutors to establish rapport with youth which disincentivizes youth to attend sessions.

*Table 4: Overview of Compensatory Education Services*

| | |
|---|---|
| Total # of youth eligible | 331 |
| Youth with IEPs | 154 (46.5%) |
| Total # of youth/services received | 36 (10%) |
| # of youth with IEPs/services received of total services received | 15 (42%) |
| # of youth CTE tutoring | 2 (< 1%) |
| Average # of tutoring hours awarded 6/21-10/22 | 80 |
| Average # of tutoring hours awarded 11/22 - Present | 15.2 |
| Average # of tutoring hours received | 3.9 |
| Average length of time from opt in to tutoring services (days) | 59 |
| % of youth assigned to Varsity tutors | 44.4 |
| % of youth assigned to LVI tutors | 22.2 |
| # of youth "no-shows" that Varsity billed to IDJJ | 15 (approx.) |

Youth who were/are still incarcerated primarily received tutoring from Literacy Volunteers of Illinois (LVI). To date, LVI has delivered most of the hours youth are entitled to even though they serve about 22% of youth who have opted in for services. While LVI has delivered many of the compensatory education hours (mainly for two students), the ability of LVI to adequately provide compensatory education above and beyond their typical school-day services has been an area of concern and the subject of contentious discussions between the Plaintiffs and Defendants. LVI provides excellent in-person services to youth but in my opinion, does not have the capacity to deliver adequate compensatory education services on a large-scale level for youth who are back in their communities. This is not the fault of LVI, but a function of scheduling volunteer tutors on evenings and weekends when school is not in session, and a lack

22

of special education experience within the volunteer ranks. On the other hand, Varsity tutors offer online services which have greater flexibility and a large pool of special educators. Despite this flexibility, youth are prevented from accessing services after school and on the weekend due to not having computer access on the living units, and the lack of secure staff to escort youth to an available computer during non-school hours.

IDJJ has recently redoubled efforts to provide adequate tutoring access, even tracking down youth who have been rearrested and are at other facilities. Accordingly, participation in the program has grown over the past several months. However, IDJJ is expending a good deal of human capital and time for very little educational gain for youth. It is difficult to imagine IDJJ being able to sustain this and provide the eligible hours calculated under the current formula. The problems in providing services may necessitate the need to revisit this issue to come up with alternative options. My original recommendations to use *Chicago Home Tutor* for content area subject matter and *Chicago Transition Services* for CTE remain plausible alternatives. Additional alternate remedies should be investigated and discussed between the Plaintiffs and Defendants. Potential avenues may include:

1) Developing a list of tutoring agencies across the state and giving youth and families autonomy to choose a provider, assisting in connecting the families and provider, with IDJJ to be billed accordingly.

2) Providing Google Chromebooks to all incarcerated students and enhancing internet access within facilities so that youth can access online tutoring services.

**Conclusion**

IDJJ has made strides toward substantial compliance, particularly in the areas of Curriculum and Blended Instruction. Full-time, full-day instruction and teacher staffing levels continue to be problem areas that are related to each other. The lack of adequate substitute

teachers necessitates class cancellations due to teacher absences, and the lack of adequate content area teachers at IYC-WRV results in youth getting less than adequate education. While teacher shortages are being felt nationwide, IDJJ should redouble efforts to streamline the hiring process, continue to fill known vacancies rather than pausing hiring, offer teachers competitive and equitable salaries, and develop partnerships with local universities that have teacher training programs. This would entail the cooperation of the IDJJ, AFSCME 31, and state legislators.

While staffing shortages may ease once teachers transfer out of IYC-STC and to other facilities, the overall student and teacher headcount will remain the same, and there are still unknowns related to the restructuring that requires continued Court monitoring, albeit on a more limited basis.[4]  IYC-STC will need to  staff a Career and Technical Education Center as required by the graduate CTE programming described in the Remedial Plan.  At the least, IDJJ needs to articulate a plan as to how the Center will be staffed or how career and vocational courses will be scheduled. These two areas should continue to be monitored for compliance until the school is established and fully operational. IDJJ should also consider alternatives to Varsity and LVI to allow compensatory education to proceed more efficiently.

---

[4] As I have informed the parties, I will have to step down as monitor at year end. I recommended a highly qualified and experienced colleague, Dr. Michael Wilson, to take my place as monitor and understand the parties are in discussions with him.